No. 55,299

IN THE MATTER OF THE APPLICATION OF SESMON SWEAT FOR A WRIT OF HABEAS CORPUS, *Appellant,* v. JOHNNIE DARR, Sheriff of Sedgwick County, Kansas, *Appellee.*

(684 P.2d 347)

Opinion filed June 8, 1984.

*Eric A. Commer,* of the Law Office of Lyle W. Britt, Chartered, of Wichita, argued the cause and was on the briefs for appellant.

*Geary N. Gorup,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Clark V. Owens,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

LOCKETT, J.: This is a habeas corpus proceeding in which petitioner claims that by operation of the interstate Agreement on Detainers (Agreement) (K.S.A. 22-4401 *et seq.*) the Sedgwick County District Court was required to dismiss the criminal charges for which he was being held for trial in that court. The material facts are essentially undisputed. They are almost wholly established by documentary evidence.

On November 9, 1982, while in custody at the Sedgwick County Jail in Wichita, petitioner applied for a writ of habeas corpus. It was immediately issued. At the conclusion of an evidentiary hearing on November 16, 1982, the trial judge ordered the writ dissolved and that petitioner remain in the sheriff's custody for trial on the Sedgwick County charges. Petitioner was tried and convicted. Petitioner appealed. The Court of Appeals reversed the district court determining the State had failed to afford Sweat a speedy trial as required by K.S.A. 22-4401 *et seq.* The State filed its Petition for Review which this court granted.

In early 1982, petitioner was a prisoner in the custody of the California Department of Corrections at the California Rehabilitation Center, Norco, California (CRC). He was serving a two-year sentence for a 1981 California robbery conviction. The superintendent of CRC informed petitioner in writing that a detainer had been lodged against him with respect to untried 1981 Sedgwick County drug charges. There is confusion in the documentation of the date petitioner was informed. He was informed between March 22, 1982, and March 26, 1982. Petitioner was provided with a set of unprepared Inmate's Notice of Place of Imprisonment and Request for Disposition of Indict-

ments, Informations or Complaints forms. Sweat determined to invoke the provisions of the interstate Agreement on Detainers. He partially filled in the blank portions of the forms and then returned the uncompleted set of forms to the California prison officials. Sweat had failed to correctly address copies of the forms to the court where the charges were pending and to the prosecuting official as required by the Agreement. The incomplete forms were incorrectly completed by the California authorities and signed by the superintendent of CRC. Sweat reviewed the completed documents. The completed documents and the California offer to deliver temporary custody, together with a form letter bearing the date of March 26, 1982, were sent by CRC by certified mail to the Sedgwick County sheriff on March 31, 1982.

The documents were received by the sheriff, but the particular date of their receipt by him is unknown. No copies of the documents were forwarded by the sheriff to the Sedgwick County District Court, or the Sedgwick County District Attorney. The documents were simply filed in the sheriff's office when received. No copies of any of the documents were mailed by CRC to the Sedgwick County District Court or to the Sedgwick County District Attorney. No documents were received by either the court or the district attorney's office from petitioner, his attorney, or any other office or person.

Sweat was later transferred to Soledad, California Correctional Training Facility where he was again notified of the Kansas detainer. A second set of forms to request disposition of the pending Kansas charges was supplied the petitioner. These forms were completed and then forwarded by the California authorities to the proper Kansas authorities. Petitioner remained in custody in California on his robbery conviction from March, 1982, to October 27, 1982, when he was returned to Wichita by the Sedgwick County sheriff upon acceptance of a California offer to deliver temporary custody. Sweat's return resulted from his second request for final disposition of untried Kansas charges. On January 24, 1983, more than 220 days after his initial request to be returned to Kansas, Sweat went to trial on the drug charges. A jury verdict finding him guilty of possession of marijuana was returned on January 27, 1983.

Forty-eight states, including Kansas and California, and the United States, are signatories to the interstate Agreement on Detainers. K.S.A. 22-4401 *et seq.*; Cal. Penal Code § 1389 *et seq.*

(West 1982). The purpose of the Agreement, as set forth in Article I, is to encourage the orderly and expeditious disposition of detainers based on untried indictments, informations or complaints, in an effort to reduce uncertainty and facilitate prisoner treatment and rehabilitation in the state where the prisoner is incarcerated. Article III contains the operative provisions of the Agreement, and in pertinent part states:

"(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty (180) days *after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's* jurisdiction *written notice* of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint. . . .

"(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by *registered or certified mail, return receipt requested.*

.  .  .  .

"(d) Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall operate as a request for final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged against the prisoner from the state to whose prosecuting official the request for final disposition is specifically directed. The warden, commissioner of corrections or other official having custody of the prisoner shall forthwith notify all appropriate prosecuting officers and courts in the several jurisdictions within the state to which the prisoner's request for final disposition is being sent of the proceeding being initiated by the prisoner." Emphasis supplied.

Article V provides for the transfer and temporary custody of the requesting prisoner to the state in which the charges are outstanding. It also provides:

"(c) If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in article III or article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect."

Furthermore, Article IX instructs that the Agreement shall be liberally construed so as to effectuate its purposes.

The Uniform Mandatory Disposition of Detainers Act (Act),

K.S.A. 22-4301 *et seq.*, is a Kansas intrastate procedure whereby persons imprisoned in this state may request final disposition of other Kansas charges pending against them. The procedures to obtain final disposition of the charges pending under the Act are similar to the procedures of the Agreement.

Both the Act and the Agreement require the person imprisoned to request final disposition of the untried charges. The request must be in writing addressed to the court where the charges are pending and to the county attorney charged with the duty of prosecuting the charges. The request under both the Agreement and the Act is to be delivered by the prisoner to the official having custody. The person having custody of the requesting prisoner certifies the reason and terms of commitment, then by registered or certified mail sends a copy of the prisoner's request and the official certificate to the court and one copy to the county attorney whom the prisoner has addressed.

This court has determined that the Agreement and the Act are parallel acts designed to secure a speedy trial to the person incarcerated in a penal institution either in this or another state. Few cases determining questions arising from the Agreement have been dealt with by this court, but we have had numerous cases arising under the Act. Questions answered as to the Act are therefore precedent for questions arising under the Agreement.

The singular issue under the Agreement of who bears the burden of noncompliance resolves itself into the question of whether petitioner or the California corrections officials bore the duty to ensure that the request for disposition of the pending Kansas charges was properly addressed. An answer requires, in addition to the procedural requirements contained within the Agreement, a review of our earlier decisions concerning the Agreement and the Act.

In *Brimer v. State*, 195 Kan. 107, 112, 402 P.2d 789 (1965), we held that there was no substantial or sufficient compliance with the Act where a Kansas inmate's request for disposition of detainer was sent to the *district* court of Saline County, rather than the *city* court of Salina in which the underlying complaint was pending. We said:

"[T]he right to invoke [the speedy trial protections of the Act] requires compliance by the prisoner with all its provisions including the preparation by him and the mailing by the warden of his notice for request of disposition of detainer to the court in which the untried indictment, information or complaint is then

pending against him. While the Act is to be construed so as to effectuate its general purpose to make uniform the law of those states which have enacted it, we cannot say that when a request for disposition of detainer is mailed to a court other than the one in which the criminal charge against the prisoner is then pending, is a compliance with the Act so as to require the state to bring the defendant to trial within the time and under the terms and conditions of section 62-2903 [Corrick]."

The *Brimer* rule was affirmatively stated in *Townsend v. State*, 215 Kan. 485, Syl. ¶ 3, 524 P.2d 758 (1974):

"To obtain the speedy trial guaranteed by section 10 of our Bill of Rights, and as legislatively defined by the uniform mandatory disposition of detainers act, it is incumbent upon an accused incarcerated in a penal institution of this state to comply with all provisions of the act, including the preparation of his written request for disposition of detainer to be addressed to the court in which the indictment, information or complaint is then pending against him and to the county attorney charged with the duty of prosecuting it."

See *State v. Brooks*, 206 Kan. 418, 479 P.2d 893 (1971).

We next addressed the relationship between the Act and the Agreement in *State v. Dolack*, 216 Kan. 622, 533 P.2d 1282 (1975). While the Uniform Mandatory Disposition of Detainers Act governs the speedy trial rights of inmates confined in Kansas correctional institutions, the Agreement on Detainers governs the speedy trial rights of those incarcerated in penal or correctional institutions outside Kansas, including the federal penitentiary at Leavenworth. *Dolack*, 216 Kan. 622, Syl. ¶ 4. The purposes of the two enactments to this extent being the same, we applied the *Brimer* rule of compliance to requests for disposition under the interstate Agreement on Detainers, holding that a request must be addressed to the court in which the indictment, information or complaint is then pending and to the county attorney charged with prosecuting it. *Dolack*, 216 Kan. 622, Syl. ¶ 5 and at p. 634. In that case our ultimate finding of noncompliance with the Agreement also took into account the inmate's blatant refusal to invoke its provisions after receiving specific instructions from the Johnson County District Attorney. 216 Kan. at 625-26, 635.

In *Ekis, Petitioner v. Darr*, 217 Kan. 817, 539 P.2d 16 (1975), we announced the rule that "substantial compliance" with the provisions of the Agreement and the Act was sufficient to invoke the protections afforded thereby. The request at issue in *Ekis*, however, was found not to be in substantial compliance with the

Agreement because of five "readily apparent deficiencies": (1) petitioner filed his "motion" in a court other than the one in which the complaint was pending, and knew of this error; (2) the motion was not accompanied by the required statement from his custodial officials concerning the status of petitioner's sentence and parole eligibility; (3) the motion was sent by ordinary first class mail rather than by certified or registered mail with return receipt requested, as required by the Agreement; (4) the motion did not indicate it was intended to be a "notice" and "request for disposition" under the Agreement, but sought only a bare dismissal of the charges; and (5) the petitioner did not waive extradition, as required under Article III (e). *Ekis,* 217 Kan. at 822. In the course of our opinion, we also discussed the obligations of custodial officials with reference to an inmate's request under the Agreement:

"Although now urging that he substantially complied, Ekis testified before the district court that at the time he prepared and filed his motion he had never heard of the Agreement on Detainers. This factor distinguishes the present case from those cited by the petitioner in which it was held that a good faith effort by a prisoner to proceed under the Agreement is all that is required of him. See, *People v. Esposito,* 37 Misc. 2d 386, 238 N.Y.S.2d 460; *People v. Masselli,* 17 A.D.2d 367, 234 N.Y.S.2d 929; *Pittman v. State,* 301 A.2d 509 (Del.); *State v. Lippolis.,* 101 N.J. Super. 435, 244 A.2d 531. In each of those cases it was held that where a prisoner made known to the officials his intent to proceed under the Agreement, their subsequent failure to comply with the act could not frustrate his rights. The burden of their failure was visited, and rightly so, on the prosecution.

. ". . . The Agreement (Art. III [c]) requires the prison officials to advise an inmate of the existence of a detainer and of his right to make a request for final disposition. (The record does not disclose whether or not that was done.) If an inmate expresses a desire to take advantage of the Agreement the officials have a duty to assist him. They have no general duty to render unsolicited legal advice on an inmate's litigation not connected with a proceeding under the Agreement." 217 Kan. at 824.

Most recently we rejected the contention that the 180-day time limit contained in Article III of the Agreement begins to run on the date the prisoner's notice and request for disposition is mailed, rather than the date it is received by prosecuting authorities in the state filing the detainer. *State v. White,* 234 Kan. 340, 673 P.2d 1106 (1983). A majority of other jurisdictions which had reached the issue ruled against such a claim, and we quoted with approval the following language from *State v. Ternaku,* 156 N.J. Super. 30, 34, 383 A.2d 437 (1978):

" 'The language of the statute is explicit. It provides for the commencement of the 180-day period when defendant has "caused to be delivered to the prosecuting officer and the appropriate court," the written notice and request for final disposition of the pending indictment. The Legislature clearly intended that the documents be delivered to the prosecutor and the appropriate court before the 180-day period starts to run. The period does not start to run upon mere execution and delivery of the notice and request to the warden, commissioner of corrections or other official having custody of defendant. In our view it would be contrary to the public interest to start the running of the 180-day period prior to actual receipt of the notice and request by the prosecutor and the court. If we were to interpret the statute as defendant requests, an indictment would be subject to dismissal each time delivery of the documents to the prosecutor and court is delayed, regardless of cause. We cannot conceive our Legislature as intending such a result by enacting the Interstate Agreement on Detainers. As a matter of fact, had the Legislature intended the 180-day period to begin from the time a defendant delivers the notice and request to the warden, commissioner of corrections or other official having custody over him, it could have so signified by appropriate language.' " 234 Kan. at 344-45.

In its majority decision, the Court of Appeals held that petitioner Sweat had substantially complied with the provisions of the Agreement by merely submitting his incomplete request for disposition of the Kansas detainer to the California correctional authorities. Thereafter, the burden of compliance with the provisions of the Agreement rested with those officials, and the court concluded that their failure to forward the request to the prosecuting attorney and the appropriate court, instead of the sheriff, would not prohibit Sweat from invoking the 180-day speedy trial limitation of the Agreement. *In re Habeas Corpus Application of Sweat,* 9 Kan. App. 2d 268, 275-80, 677 P.2d 554 (1984). To the extent any prior Supreme Court decisions are inconsistent, the majority invited us to overrule those decisions. We decline.

In rendering judgment for petitioner Sweat, the Court of Appeals addressed its opinion to two issues: What must be done to trigger commencement of the Article III (a) 180-day period; and how should Article III (b) be applied in answering the first question? *Sweat,* 9 Kan. App. 2d at 273. Our rule in *White,* that the 180-day period commences only upon receipt of the prisoner's notice and request by proper authorities in the state which filed the detainer, was criticized by the court as eviscerating Article III (b) "of all impact or force." 9 Kan. App. 2d at 274. In support the court postulated a case in which custodial officials repeatedly refused to forward a prisoner's request for speedy

trial of the outstanding charges, which under a strict interpretation of the *White* rule would nevertheless foreclose the prisoner's reliance on the protections of the Agreement solely because the proper authorities would never receive notice commencing the 180-day period. *Sweat,* 9 Kan. App. 2d at 274-75. We agree that cases involving misfeasance or malfeasance on the part of custodial officials deserve careful consideration under the Agreement and were considered in *Ekis,* but such wrongdoing is neither apparent nor claimed on the facts of this particular case.

Responding to the second question, the applicability of Article III (b) in determining what actions trigger the 180-day period, the court relied on cases from other jurisdictions for its conclusion that the prisoner's sole obligation is to inform his custodial authorities of his request for disposition of a detainer, after which the burden is on those officials to comply with the procedural requirements of the agreement. *Sweat,* 9 Kan. App. 2d at 275-78. However, we have never held this to be the law in Kansas, which was acknowledged by the Court of Appeals. *Sweat,* 9 Kan. App. 2d at 277.

Judge Meyer, in his dissent, reviewed the prior decisions of this court and concluded that the majority opinion was directly contrary to the views of the Kansas Supreme Court. There was no claim by Sweat of delay on the part of the California officials. The array of cases relied on by the majority involved charges that the custodial officials were dilatory in meeting their obligation or involved bad faith on the part of those officials. Thus, the operative language of Article III (b) upon which the various courts based their holdings was limited to the duty to "promptly forward" the prisoner's request.

The Agreement and the Act are clear as to the requirements placed upon the prisoner. To insure that he will be promptly brought to trial on charges pending in this state, he must cause to be delivered to the prosecuting officer and the appropriate court written notice of his request for final disposition of the pending Kansas charges. He shall send the notice to the warden who will forward it together with the proper certificate. *State v. Dolack,* 216 Kan. 622, and *Ekis, Petitioner v. Darr,* 217 Kan. 817, clearly place the burden of compliance with this requirement of the Agreement and the Act upon the prisoner. The 180-day speedy

trial limitation contained in Article III (a) of the Agreement, K.S.A. 22-4401 *et seq.,* commences only upon receipt of the prisoner's notice and request by proper Kansas authorities which caused the detainers to be filed against the prisoner. Here the proper authorities never received the required copies of the prisoner's first request. Therefore, the time limitation did not commence until the proper authorities received Sweat's second request for disposition of the charges pending against him pursuant to K.S.A. 22-4401 *et seq.*

There is no claim of affirmative wrongdoing by the California or Kansas authorities. None appears in the evidence or is claimed by Sweat. At most, the California authorities, when performing Sweat's obligation, mistakenly addressed the forms to the Sedgwick County sheriff. We do not feel that is misfeasance or malfeasance. Without clear proof of wrongdoing by the California correction officials, the petitioner has not effectively shifted the *Dolack/Ekis* burden of substantial compliance away from himself. A petitioner who fails in his obligation under the Agreement to properly address his request for speedy disposition of charges pending against him must bear the burden and the consequences of the improperly delivered request. Here the petitioner has not "substantially complied" with his requirement under the Agreement.

We affirm the district court in dissolving the petitioner's writ of habeas corpus, and reverse the Court of Appeals.