NOT DESIGNATED FOR PUBLICATION

No. 112,040

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAVANON RAY FELDER,
*Appellant*.


MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES FRANKLIN DAVIS, judge. Opinion filed February 5, 2016. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Paul E. Brothers*, legal intern, *Steven J. Obermeier*, senior deputy district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ATCHESON, P.J., SCHROEDER, J., and HEBERT, S.J.


ATCHESON, J.: A jury in Johnson County District Court convicted Defendant Davanon Ray Felder of one count of aggravated assault and two counts of misdemeanor theft in connection with shoplifting incidents at a Home Depot and a Target. On appeal, Felder argues both that he was not tried within the time limits established in the Agreement on Detainers Act, K.S.A. 22-4401 *et seq.*, and that the introduction of the photo array from which various witnesses first identified him unduly prejudiced the jurors. We find those contentions unavailing and affirm the convictions.

1

An abbreviated version of the facts sufficiently sets the stage for Felder's legal arguments. As Felder and a friend were leaving a Home Depot in Overland Park on February 4, 2013, store personnel confronted them because they had been seen pocketing merchandise they hadn't paid for. The confrontation attracted the attention of Thomas Rhomberg, an off-duty police officer who had been shopping at the store. After Felder pushed one of the employees, Rhomberg followed him into the parking lot and, with badge in hand, approached Felder and directed him to stop. Felder told Rhomberg to back off. He added an exclamation point to his statement by brandishing a box cutter. Rhomberg retrieved a handgun from his car. By then, Felder and his companion had gotten in their car. As Rhomberg again approached, Felder put his car in reverse and accelerated toward the officer. Rhomberg jumped out of the way, smashing the rear driver's side window with his gun as the car passed by.

About 6 weeks later, Felder was filching merchandise from a Target in Mission. Store security officers confronted him as he was going out a double set of doors toward the parking lot. They pulled back when they perceived Felder to be waving a weapon of some kind at them. Felder got in a car and drove off. The security officers thought they saw Felder point a gun at them as he sped away.

Both incidents were recorded by store security cameras. And investigating police officers were able to trace the car's license plate to Felder's mother. They found the car, with a broken window, at her home. Felder was no stranger to the criminal justice system. So law enforcement officers readily located a police identification photograph of him—commonly known as a mugshot. Investigators included the mugshot with five others in a photo array they showed to witnesses from each incident. Witnesses consistently picked Felder out as the shoplifter.

The Johnson County District Attorney's Office promptly charged Felder in one case with aggravated assault of Rhomberg, a felony; misdemeanor battery of the Home Depot employee he shoved; and misdemeanor theft from the store. The office charged Felder in a separate case with two counts of aggravated assault of the Target security officers and misdemeanor theft from that store. Eventually, the cases were consolidated for trial.

Felder was on parole in Missouri for a felony conviction. The Johnson County charges led to the revocation of his parole, and he was returned to the custody of the Missouri Department of Corrections on April 18, 2013.

Almost immediately after reentering the Missouri prison system, Felder sent the warden of the facility where he was being held a request for disposition of any detainers from Johnson County. Using what appears to be a form response dated April 30, 2013, the warden informed Felder no detainers were on file. The form contains the following notation: "If no detainer on file is marked and you think that you have a pending charge[,] you will need to contact the county so they can place a detainer[;] then you will be able to file a 180 [day] request for disposition . . . ." Felder wrote a letter to the Clerk of the Johnson County District Court the same day asking that a detainer be filed on his pending charges there so that he could dispose of them. He attached the notice from the warden to his letter. The district court clerk received the letter on May 3 and forwarded it to the district attorney's office.

The district attorney's office filed a detainer with the Missouri Department of Corrections around the time of this communication, but the exact date is not entirely clear from the record. An unverified document from the Missouri Department of Corrections suggests the agency received the detainer on April 30. Missouri has adopted the Agreement on Detainers Act and, thus, participates in the same process as Kansas. Rev. Stat. § 217.490 (1982).

3

After an out-of-state detainer has been filed and an inmate requests a disposition of the charges, the warden has to certify information on the inmate's custodial status and then forward the certificate, along with the inmate's request, to the "prosecuting official" and the court where the charges are pending. See K.S.A. 22-4401, Art. III(c), Art. IV(b); Rev. Stat. § 217.490 (1982). The warden provided the certificate and related information on Felder to the appropriate Johnson County authorities on July 17, 2013. Upon receipt of the inmate's request for disposition of a detainer, the charging authority must bring the inmate to trial within 180 days, absent any court-ordered continuances for good cause. K.S.A. 22-4401, Art. III(a).

In mid-November 2013, Felder's lawyer requested a continuance of the trial, then scheduled for November 18. The district court reset the trial for January 27, 2014. Shortly before the new trial date, Felder moved to dismiss the charges because he had not been brought to trial within 180 days. The district court denied the motion, concluding that the 180-day period began with the receipt of the material from the prison warden on July 17 and the continuance granted in November should not be counted against the time.

At trial, Felder's lawyer told the jurors during opening statement that his client did, indeed, shoplift from Home Depot and Target but he didn't unlawfully assault anyone. The State called eyewitnesses and some of the law enforcement officers who investigated the incidents. Over the defense's objection, the district court admitted the photo array, including Felder's mugshot, as part of the State's evidence. Felder testified in his own defense. He admitted to stealing from both stores. But he denied waving around a box cutter or knowing that Rhomberg was anywhere near his car as he backed up in the Home Depot parking lot. He testified that he had a set of keys in his hand as he left the Target store and was holding a bottle of pop as he drove away.

4

The jury convicted Felder of the aggravated assault of Rhomberg and misdemeanor thefts from both stores. The jury acquitted him of the other charges.

At a later hearing, the district court sentenced Felder to 34 months in prison for the aggravated assault, the longest guideline term based on Felder's substantial criminal history; postrelease supervision for 12 months; and 12 months in jail for each of the thefts to be served concurrently with the prison sentence. Felder has timely appealed.

LEGAL ANALYSIS

*Felder Received a Timely Trial under the Agreement on Detainers Act.*

For his first point, Felder contends the district court erred in denying his motion to dismiss because he was tried more than 180 days after he requested disposition of the detainers. The pertinent facts are undisputed, and the issue depends upon how those facts should be treated under the Agreement on Detainers Act. The point presents a question of law over which we exercise unlimited review. See *Dumler v. Kansas Dept. of Revenue*, 302 Kan. 420, 425, 354 P.3d 519 (2015).

As provided in the Agreement on Detainers Act, if a prosecutor has brought criminal charges against a person incarcerated in another state and then files a detainer with the custodial agency, the person may request that he or she be tried on those charges within 180 days. K.S.A. 22-4401, Art. III(a). The warden of the facility holding the person must promptly forward the request to the prosecuting official and the court in which the charges are pending. The warden must also provide a certificate stating the sentence under which the person is being held, the time already served, good time due, and parole eligibility. K.S.A. 22-4401, Art. III(c), Art. IV(b). If the prisoner is not transferred to the jurisdiction in which charges are pending and tried on them within the

5

180-day period, the charges must be dismissed with prejudice. K.S.A. 22-4401, Art. III(e).

Simply put, the issue the parties have presented to us turns on when the 180-day period for trying Felder on the Johnson County charges began to run. If his letter to the Johnson County District Court clerk, received on May 3, triggers the time period, Felder was not tried within 180 days. The deadline would have passed at the end of October. But if the time runs from the receipt of the notice and certificate from the Missouri prison warden on July 17, as the district court found, Felder received a timely trial. Everybody agrees the delay based on Felder's requested continuance from November 2013 until late January 2014 does not count against the 180-day deadline, since the Agreement on Detainers Act permits continuances for good cause. See K.S.A. 22-4401, Art. III(a).

On this point, we conclude the district court made the correct legal call. Felder's letter was not a request for the disposition of a pending detainer, and it could not reasonably be construed to contain such a request. At the time Felder wrote the letter, Johnson County had not filed a detainer. Felder knew that—he attached the notice from the warden stating there were no detainers. Felder's letter asked that the Johnson County District Attorney's Office file a detainer for the criminal charges arising out of the incidents at the Home Depot and Target stores. But the letter was nothing more. An inmate cannot compel a prosecuting authority in another state to file a detainer. Even after a detainer has been filed, the inmate need not request a disposition of the detainer and the charges. In some circumstances, the inmate could very well believe a lengthy delay might be to his or her advantage as witnesses become more difficult for the prosecutor to find and their recollections dull.

In short, Felder's May 3 letter plainly requesting one thing—the filing of a detainer—should not be treated as asking for something different—the disposition of a

6

detainer. The letter, therefore, did not trigger the 180-day period provided in the Act, and Felder received a trial in conformity with the time limits of K.S.A. 22-4401.

We do not view our decision as depriving Felder of a right by construing his letter in a particularly narrow way or finding it somehow noncompliant for a hypertechnical deviation from the statutory requirements. Felder was both conversant with the detainer process and well aware that he asked that a detainer be filed, not that he be brought to trial on an existing detainer. In the letter, Felder did express an interest in pleading to the charges. That doesn't change the fundamental purpose of the letter or the nature of the request. Felder's comments about entering a plea were not binding and reflect only an optimistic wish about what might happen. He and the district attorney's office obviously were never able to work out a satisfactory plea arrangement.

Probably as significant, Felder's letter—whatever its content—could not substitute for the warden's certificate that is an essential part of the formal request for disposition of a pending detainer. The certificate provides the prosecuting officer with precise (and presumably accurate) information about the sentence on which the person is presently incarcerated. If the person is serving a long sentence on a conviction for a serious felony, the prosecuting officer might determine the time, cost, and effort to transport, house, and then try the individual on a comparatively minor crime to be unjustified. We suppose most district or county attorneys would do a fair amount of reconnaissance of that type before filing a detainer. But the warden's certificate provides another layer of information to be factored into a final decision to proceed on a person's request for trial. In at least some instances, the prosecuting authority might decide to abandon the detainer and the underlying charges. Here, Felder's letter alone did nothing to further those important interests. Nor could it even if it were an unequivocal request for disposition of an existing detainer.

7

Felder argues that we should find his letter to be in "substantial compliance" with the requirements of the Agreement on Detainers Act. For the reasons we have outlined, we decline to do so. Although substantial compliance is legally sufficient, see *In re Habeas Corpus Application of Sweat*, 235 Kan. 570, Syl. ¶ 5, 684 P.2d 347 (1984), Felder simply didn't cross that threshold with his May 3 letter.

Felder also commends to us *State v. Burnett*, 297 Kan. 447, 301 P.3d 698 (2013), as apt authority for his claim to relief. We disagree. In *Burnett*, the court construed the Uniform Mandatory Disposition of Detainers Act (UMDDA), K.S.A. 22-4301 *et seq.*, addressing procedures for a person confined in a Kansas penal facility to dispose of criminal charges pending against him or her in a Kansas district court. The UMDDA deals only with intrastate charges against a Kansas prisoner rather than with Kansas charges filed against a person incarcerated in another state. Although the procedures under the two statutory schemes are similar, they are not identical.

Significant here, the UMDDA, notwithstanding its title, permits a prisoner to request the disposition of any pending intrastate charges whether or not a detainer has been filed. K.S.A. 22-4301(a). The Agreement on Detainers Act, under which Felder proceeded, requires the prosecuting officer to file a detainer to trigger the inmate's right to request disposition of the charges.

In that case, Burnett was in the legal custody of the Kansas Department of Corrections but was being held in the McPherson County jail. He made a written request for trial on charges pending against him in Reno County and sent copies to various officials, including the Secretary of the Department of Corrections and the Clerk of the Reno County District Court. As provided in the UMDDA, the Department of Corrections should have sent a copy of Burnett's request along with a certificate comparable to the one required under the Agreement on Detainers Act, to the Reno County District Court

8

and to the Reno County Attorney. See K.S.A. 22-4302. The Department of Corrections never did.

Nonetheless, Burnett was physically delivered to Reno County authorities to face the charges against him. Sometime after his preliminary hearing, Burnett filed a motion to dismiss because he had not been brought to trial within 180 days as required by the UMDDA. See K.S.A. 22-4303. The district court denied the motion, and this court affirmed. The Kansas Supreme Court reversed, finding that Burnett had done what he was required to do under the UMDDA and had not been tried within 180 days. *Burnett*, 297 Kan. at 457-59. The State argued, in part, Burnett had not complied with the UMDDA because the Department of Corrections had *never* forwarded the required certificate to the Reno County Attorney. The court rejected that argument because Burnett had no control over the Department of Corrections and could not require it to fulfill its statutory obligation under the UMDDA. 297 Kan. at 454-55. In turn, the court measured the 180-day period from the date the Department of Corrections and the Reno County District Court received Burnett's request for disposition of the charges—a request that was legally sufficient to initiate his rights under the UMDDA.

For the reasons we have already discussed, *Burnett* is inapposite. First, of course, Felder's letter requesting that a detainer be filed did not trigger his right to have the Johnson County charges tried or otherwise resolved. The prosecuting authority, here the Johnson County District Attorney, had to file a detainer—something it could choose to do or not—as a condition precedent to any rights Felder had under the Agreement on Detainers Act. Second, the warden at the Missouri prison *did* comply with the Agreement on Detainers Act by forwarding to the appropriate Johnson County officials both Felder's request for disposition of the detainer, once the detainer was filed, and the required certificate. The governmental authority having legal custody of Felder fulfilled its obligation under the Act—quite unlike the Department of Corrections in *Burnett*.

9

Felder has presented no sound basis for upsetting the district court's ruling denying his motion to dismiss based on the Agreement on Detainers Act. Felder received all that he was due under the Act, including a timely trial.

*Felder Was Not Prejudiced by the Introduction of the Photo Array at Trial.*

For his other point on appeal, Felder contends the State's introduction of the photo array shown to witnesses as part of the police investigation was so prejudicial as to deny him a fair trial. He argues the unfair prejudice of the photo array far outweighed any probative value, so the district court erred in allowing the jury to see it. Felder weaves together two arguments to support his position. He says his identity never really was a contested issue and the array effectively informed the jury he had been previously involved in the criminal justice process in some negative way. We are unpersuaded the photo array rendered the trial unfair.

As a general matter, relevant evidence should be admitted at trial. K.S.A. 60-407(f). A district court's decision to admit or exclude evidence will be reviewed on appeal either as a matter of law without deference if the ruling is based on materiality or as an abuse of discretion if it is based on probativeness. *State v. Boleyn*, 297 Kan. 610, Syl. ¶ 1, 303 P.3d 680 (2013); see *State v. Berriozabal*, 291 Kan. 568, 586, 243 P.3d 352 (2010) (An appellate court reviews de novo a contested determination of materiality.); *Wendt v. University of Kansas Med. Center*, 274 Kan. 966, 975, 59 P.3d 325 (2002) (A decision to admit or exclude a particular piece of evidence that is otherwise material largely rests in the trial court's sound discretion.). The Kansas Supreme Court has succinctly laid out the general rule this way:

> "When reviewing a district court's decision concerning the admission of
> evidence, an appellate court first determines whether the evidence is relevant. All
> relevant evidence is admissible unless statutorily prohibited. Evidence is relevant if it has
> any tendency in reason to prove any material fact. Accordingly, there are two elements of

relevancy: a materiality element and a probative element. Materiality addresses whether a fact has a legitimate and effective bearing on the decision of the case and is in dispute. Evidence is probative if it has any tendency in reason to prove a fact. An appellate court reviews a district court's determination that evidence is probative for abuse of discretion whereas the district court's decision regarding materiality is reviewed de novo." *Boleyn*, 297 Kan. 610, Syl. ¶ 1.

A district court, however, may exclude otherwise admissible evidence if its potential for unfairly prejudicing the jurors outstrips its probative value. *State v. Huddleston*, 298 Kan. 941, 961-62, 318 P.3d 140 (2014). The call falls within the discretion afforded district courts, and we review for abuse of that discretion. *State v. Lowrance*, 298 Kan. 274, 291, 312 P.3d 328 (2013).

The first strand of Felder's argument seems to bear on materiality. That is, was identity a contested issue in the case? On appeal, Felder argues not and points to his lawyer's opening statement to the jurors. The lawyer conceded the evidence would show Felder shoplifted, as charged, but did not criminally assault anyone at Home Depot or Target. As a practical matter, such a concession, if borne out in the evidence, would take identity out of the mix of disputed matters the jurors would have to resolve. But the concession did not amount to a stipulation formally removing the issue from the jurors' consideration. And the State had no way of knowing for sure as it presented evidence that Felder would later take the stand to validate his lawyer's preview.

The State, therefore, was entitled to offer evidence showing that Felder, indeed, was the person stealing from the stores. The State could have witnesses identify Felder in court as the person they saw. Those identifications would have come long after the crimes and at least arguably might have been vulnerable for that reason. To counter that inference, the State was also entitled to put on evidence showing that the witnesses identified Felder through the photo array much nearer the time of the events. In turn, the

11

photo array itself—the six photographs—would be relevant to establish that the display was not impermissibly suggestive by highlighting Felder as distinctive from the others.

The use of mugshots in a photo array could be a problem if they reveal the individuals to have been in custody. For example, photos containing placards identifying law enforcement agencies would warrant close judicial scrutiny, as would clothing likely identifiable as jail garb. The photo array admitted at Felder's trial is part of the record on appeal. We see no obvious flaws of that kind. The photographs contain no identifying information as to their origins. The subjects are shown from the shoulders to head and appear to be wearing similar gray sweatshirts or drapes over any other clothing.

We suppose some jurors might deduce Felder had some sort of previous contact with some law enforcement agency because the officers investigating these incidents had ready access to a photograph of him. That's not a problem with the admission of the photo array itself, the point Felder argues, as much as it is with the fact the officers could put together the array. Ultimately, the inference is too tangential to render the photo array unduly prejudicial as a trial exhibit. We suppose, as well, that Felder would have been entitled to a limiting instruction cautioning the jurors to draw no inferences from the investigators' access to a photograph of him. But, as a tactical consideration, such an instruction likely would only call attention to something that otherwise would be of little significance. See *State v. Massengale*, No. 109,351, 2014 WL 349612, at *11 (Kan. App. 2014) (unpublished opinion) (Atcheson, J., concurring), *rev. denied* 301 Kan. ___ (2015).

Even assuming the admission of the photo array to have been error—an assumption that is overly generous to Felder—we cannot conclude he was deprived of a fair trial as a result. The error would fall short of a constitutional violation, so we would have to find there might reasonably have been a different outcome at trial had the photo array been excluded as evidence. *State v. Greene*, 299 Kan. 1087, 1095, 329 P.3d 450 (2014). Almost needless to say, the evidence against Felder on the theft charges was

overwhelming. As to them, any error would have been harmless. Likewise, the aggravated assault conviction turned on a credibility contest between Rhomberg and Felder as to what happened in the Home Depot parking lot. The jurors heard each of them testify and chose to believe Rhomberg. That was the decisive evidence, not the photo array and some attenuated inference that might have been drawn from it. See *State v. Hinchsliff*, No. 103,608, 2011 WL 4031502, at *9-10 (Kan. App. 2011), *rev. denied* 293 Kan. 1110 (2012). Felder was acquitted of the other charges. We are disinclined to read a great deal into split verdicts, but the jurors were not disposed to blindly convict Felder, suggesting the absence of undue prejudice or an unfair trial.

Felder has failed to demonstrate any error in the admission of the photo array during his trial.

Affirmed.

13