NOT DESIGNATED FOR PUBLICATION

No. 123,904

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DENNIS CLARK,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; MICHAEL A. RUSSELL, judge. Opinion filed February 4, 2022. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Kayla Roehler*, assistant district attorney, *Mark A. Dupree Sr*., district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., HILL and GARDNER, JJ.

PER CURIAM: Wyandotte County charged Dennis E. Clark with several sex crimes in 2014. Clark posted bond but failed to appear for his preliminary hearing. Johnson County charged Clark with similar crimes in 2015, sentenced Clark in 2018, and ordered him to serve his sentence in the custody of the Kansas Department of Corrections (KDOC). A few days after arriving at a KDOC facility, Wyandotte County issued a transport order and warrant for Clark's arrest. Clark was sent to Wyandotte County a few days later. Though Clark did not file a request for disposition under the Uniform

1

Mandatory Disposition of Detainers Act (UMDDA), he moved to dismiss in January 2019, arguing the State had failed to try him within the UMDDA 180-day time limit. The district court denied that motion, finding the UMDDA did not apply because Clark failed to request a disposition of detainer. Clark appeals, arguing the State essentially agreed to the UMDDA timeline by transporting him soon after he arrived at a KDOC facility and by preventing him from filing a request while in KDOC custody. Finding no error, we affirm.

*Factual and Procedural Background*

Wyandotte County (the State) charged Clark with several sex crimes in October 2014. Clark posted bond but was later arrested for similar crimes in Johnson County. In 2015, the district court issued a bench warrant for Clark after he failed to appear for his preliminary hearing. In 2018, the Johnson County District Court sentenced Clark in his other case and ordered him to serve his sentence in the custody of the KDOC. Clark arrived at El Dorado Correctional Facility (EDCF) on January 23, 2018. Two days later, Wyandotte County sent a transport order for Clark to return to Wyandotte County for his 2014 case. He arrived at Wyandotte County Jail on January 30, 2018. One year later, although Clark had not filed a disposition of detainer, he moved to dismiss for the State's violation of the UMDDA.

The district court held a hearing in September 2019 on Clark's UMDDA motion to dismiss. Clark called Stephanie Holland, detainer clerk with the EDCF. She testified that EDCF's practice is to notify an inmate of his right to file a request under the UMDDA when it receives a valid warrant from a county stating the inmate has an untried indictment, information, or complaint.

The district court found that Clark acknowledged in his motion to dismiss that he had failed to file the required documents under the UMDDA. The district court noted

2

Clark's complaint that the State had transported him to Wyandotte County before he had a chance to file a request, but it found that Clark had failed to assert his speedy trial rights under the UMDDA and therefore could not later claim its protection. The court then found that the State did not violate Clark's due process rights because it is the inmate's responsibility to invoke the UMDDA if he or she so chooses. As a result, the district court denied Clark's motion to dismiss.

In November 2019, Clark's jury trial led to an acquittal on one charge and a hung jury on the others. The district court scheduled a new trial for March 2020, but Clark requested a continuance. The district court held a motions hearing on June 19, 2020, at which Clark waived his statutory speedy trial right. But at that point, Kansas Supreme Court Administrative Order 2020-PR-0076, effective June 16, 2020, suspended all jury trials because of the COVID-19 global pandemic.

In February 2021, Clark pleaded no contest to two counts of aggravated battery, a severity level 5 person felony under K.S.A. 2014 Supp. 21-5413(b)(2)(A). The district court sentenced Clark in March 2021 to 85 months' imprisonment with a postrelease supervision period of 24 months. Clark timely appeals.

*Did the District Court Err in Denying Clark's Motion to Dismiss Under the UMDDA?*

The sole issue Clark briefs on appeal is whether the district court erred in denying his motion to dismiss under the UMDDA.

"Whether a defendant's statutory right to a speedy hearing under the UMDDA is violated is a question of law subject to de novo review. Similarly, resolution of this issue involves statutory interpretation of the UMDDA and a determination of jurisdiction, which are also subject to unlimited review." *State v. Dillard*, No. 122,836, 2021 WL 3042243, at *4 (Kan. App. 2021) (unpublished opinion).

> "'[W]e first attempt to give effect to the intent of the legislature as expressed through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to express language, rather than determine what the law should or should not be. Stated another way, when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. Stated yet another way, a clear and unambiguous statute must be given effect as written. If a statute is clear and unambiguous, then there is no need to resort to statutory construction or employ any of the canons that support such construction.'" *State v. Ayers*, 309 Kan. 162, 163-64, 432 P.3d 663 (2019).

This court "construes criminal statutes strictly in a defendant's favor, and any reasonable doubt about a statute's meaning must be decided in the accused's favor." *State v. Griffin*, 312 Kan. 716, 720, 479 P.3d 937 (2021).

Clark argues the State's decision to transport him before EDCF could serve the warrant and inform him of his rights under the UMDDA constructively triggered the Act's 180-day time limit to dispose of his pending case. The State counters that the UMDDA does not apply because Clark failed to file a written request, as inmates must do to invoke the Act's protections.

### *The Uniform Mandatory Disposition of Detainers Act*

The UMDDA provides an inmate of a Kansas penal or correctional institution the ability to require disposition of any criminal charges pending within the state to avoid indefinite suspension of those charges, prevent delays in the administration of justice, and require courts to hear cases within a reasonable amount of time. It is a statutory right, not a constitutional one. *State v. Burnett*, 297 Kan. 447, 452-53, 301 P.3d 698 (2013).

The UMDDA requires an inmate to send a written request for disposition:

"Any inmate in the custody of the secretary of corrections may request final disposition of any untried indictment, information, motion to revoke probation or complaint pending against such person in this state. The request shall be in writing, addressed and delivered to the court in which the indictment, information, motion to revoke probation or complaint is pending, to the county attorney charged with the duty of prosecuting it and to the secretary of corrections. Such request shall set forth the place of imprisonment." K.S.A. 2020 Supp. 22-4301(a).

Once the Secretary of Corrections receives the inmate's request, the Secretary must promptly inform the inmate in writing of "the source and nature of any untried indictment, information, motion to revoke probation or complaint against such inmate of which the Secretary has knowledge or notice, and of such inmate's right to make a request for final disposition thereof." K.S.A. 2020 Supp. 22-4301(b).

Another UMDDA statute shows that a 180-day clock begins when the appropriate district court and county attorney receive the certificate of commitment from the Secretary of Corrections. See K.S.A. 2020 Supp. 22-4303(b)(1).

"Once an inmate's request for disposition of detainer complies with statutory requirements and is received by the appropriate district court and county attorney from the Secretary of Corrections, the UMDDA gives the State 180 days to bring the pending criminal charge to trial unless that time is extended in accordance with statutory provisions. Otherwise, the court loses jurisdiction over the untried charge." *Griffin*, 312 Kan. 716, Syl. ¶ 2.

"Custody" for purposes of the UMDDA does not mean "physical custody." See *Burnett*, 297 Kan. at 456; *Dillard*, 2021 WL 3042243, at *4. Addressing the State's argument that the Legislature responded to *Burnett* with the 2016 amendments, *Dillard* held that the UMDDA amendments *broadened* who may file a request for final disposition from "'[a]ny person who is imprisoned in a penal or correctional institution' to '[a]ny inmate in the custody of the secretary of corrections.'" 2021 WL 3042243, at *4.

The *Dillard* court also held that there is no language in the UMDDA "that supports a finding that an inmate's transfer to a county jail on other matters removes the inmate from KDOC custody." 2021 WL 3042243, at *5. In other words, once a district court sentences the individual to the custody of KDOC, he or she is in state custody until the sentence is served. It does not matter if the State temporarily transfers the individual to face charges in another county. See *Burnett*, 297 Kan. at 456; *Dillard*, 2021 WL 3042243, at *4-5.

Although the inmate must trigger the UMDDA application by affirmatively requesting final disposition of the pending charges in writing, appellate courts have held that "substantial compliance" is sufficient. See *Burnett*, 297 Kan. at 453; *Sweat v. Darr*, 235 Kan. 570, 575, 684 P.2d 347 (1984). So at the very least, the inmate must submit a written request. See *Burnett*, 297 Kan. at 453; *State v. Eaton*, No. 122,031, 2020 WL 7409961, at *5-7 (Kan. App. 2020) (unpublished opinion) (finding county attorney's actual notice coupled with inmate's written application mailed to district court "substantial compliance" under UMDDA); *State v. Lomon*, No. 116,497, 2017 WL 1535229, at *1 (Kan. App. 2017) (unpublished opinion) (finding inmate substantially complied by mailing handwritten request to county attorney, although he failed to send application to district court because correctional facility's refusal to forward application to county attorney or district court does not count against inmate). "[A]bsent some claim that prison officials thwarted the inmate's request by misfeasance or malfeasance," the inmate's burden is "substantial compliance" under the UMDDA. *Griffin*, 312 Kan. at 724.

But generally, an inmate does not substantially comply if the inmate fails to send a copy of the request to the parties required by the UMDDA. For example, in *State v. Foster*, No. 117,118, 2018 WL 4039455, at *7-8 (Kan. App. 2018) (unpublished opinion), another panel of this court held that an inmate's request sent only to the Johnson County District Court was not "substantial compliance" under the UMDDA because Foster failed to send a copy to either the county prosecutor or the proper custodial

official. Thus, Foster failed to trigger the UMDDA's 180-day clock. 2018 WL 4039455, at *8.

*Application*

Clark first argues that the State's failure to serve him with a warrant before ordering transportation amounts to acquiescence to the UMDDA's application. Yet he fails to support that argument with legal authority. As a result, we could consider the issue of acquiescence inadequately briefed and thus waived or abandoned. See *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019).

But even if we reach the merits of that argument, caselaw shows that the State cannot "acquiesce" to UMDDA's application. Although the UMDDA places a duty on the Secretary of Corrections, the UMDDA does not bestow upon the State any similar responsibilities. The State thus lacks the ability to trigger the UMDDA's 180-day time limit. See K.S.A. 2020 Supp. 22-4301 et seq. As Kansas courts have held, the statutory time limit cannot start until the Secretary certifies the inmate's written request and sends it to the prosecutor and district court. See *Griffin*, 312 Kan. at 725; *Burnett*, 297 Kan. at 454-55. Because the UMDDA does not give the State the ability to trigger the 180-day time limit, Clark's acquiescence argument is unpersuasive.

Clark next argues that he could not have asked for disposition before the State issued a warrant. But the UMDDA contains no language requiring the State to issue a warrant before the inmate may make a written request for disposition. See K.S.A. 2020 Supp. 22-4301(a). True, the detainer clerk testified that EDCF's practice is to wait until it has received a warrant to tell the inmate of his or her right to request a detainer. But that practice is not required by the UMDDA—that Act does not require the Secretary of Corrections to wait for a warrant before informing an inmate of his or her right to request disposition. It merely requires the Secretary to perform its duties once the inmate

7

affirmatively makes a request. K.S.A. 2020 Supp. 22-4301(b); see *Griffin*, 312 Kan. at 721. Thus, Clark fails to persuade us that the State prevented him from filing a written request for disposition by transporting him before serving him with a warrant.

Clark also contends that his transfer to Wyandotte County cut off his opportunity to file a request. But "custody" for purposes of the UMDDA does not equal "physical custody," so Clark's transfer to Wyandotte County did not cut off his opportunity to file a request. See *Burnett*, 297 Kan. at 456; *Dillard*, 2021 WL 3042243, at *4-5. Clark could have filed the written request any time while in Wyandotte County Jail awaiting trial on this case. The detainer clerk's testimony supports this interpretation of the UMDDA—she testified that Clark is still considered in the "legal custody" of the KDOC even though Wyandotte County transferred him to the Wyandotte County Jail, and that EDCF considered Clark to be in the "temporary custody" of the Wyandotte County Jail until his return to its facility.

In short, the State did not prevent Clark from filing his UMDDA request. He has remained in KDOC "custody" since January 2018 and could have filed the request at any time before the State brought him to trial. See K.S.A. 2020 Supp. 22-4301(a) and (c).

Clark may also be trying to raise a procedural due process argument through his acquiescence argument, as he did to the district court. But he does not brief any constitutional issues on appeal, so we find that he has abandoned that argument. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018).

The district court did not err by finding that Clark failed to invoke the protections of the UMDDA.

Affirmed.