NOT DESIGNATED FOR PUBLICATION

No. 123,645

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHAUNCEY L. BROWNFIELD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed May 13, 2022. Affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Thomas R. Stanton*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., HILL and GARDNER, JJ.

PER CURIAM: Under Kansas law, after a prisoner properly begins the disposition of pending charges, the State's failure to bring those charges to trial within 180 days deprives the district court of jurisdiction and to hear the matter, and any charges must be dismissed. This appeal asks us to decide whether a prison inmate complied with the Uniform Mandatory Disposition of Detainers Act, K.S.A. 22-4301 et seq., to the extent that the charges pending against him must be dismissed because his detainer was not timely adjudicated. The district court ruled that the prisoner did not substantially comply with the Detainers Act. The prisoner argues that actions of the prison officials misled him

1

and the court should have dismissed the pending charges. Our review of the record persuades us that the district court is correct. We affirm.

*This case has been appealed before.*

Chauncy Brownfield pleaded guilty to aggravated battery. His crime was committed in December 2015 while he was incarcerated at Reno County Correctional Facility. But before he was sentenced he moved to withdraw his plea. The district court denied his motion and sentenced him to prison for 23 months. He appealed the denial of his motion to withdraw his plea.

A panel of this court in *State v. Brownfield*, No. 119,853, 2020 WL 499711, at *3 (Kan. App. 2020) (unpublished opinion), held that the district court had properly exercised its discretion in denying Brownfield's motion to withdraw his plea.

The panel also ruled that the record on appeal was insufficient to determine whether Brownfield had sufficiently complied with the Detainers Act to the extent that the charges should be dismissed. 2020 WL 499711, at *4. Brownfield claimed he had tried to initiate action on his detainer caused by this pending charge while he was incarcerated at the Norton Correctional Facility in March 2016. The panel remanded that question to the district court for further consideration. 2020 WL 499711, at *4.

*On remand, the district court heard testimony of two witnesses.*

Brownfield and the Norton Correctional Facility's detainer clerk who handled Brownfield's request both testified at the remand hearing. Brownfield testified that he filed a Form-9 with the Norton Correctional Facility and expected that it would forward the request to be brought to court on his detainer within 180 days. He testified that he was asked to fill out two account withdrawal request (AWR) forms for mailing costs in the

amount of $6.74 each, but he did not do so. Brownfield testified if he filled out the AWR forms, Norton Correctional Facility either would have withdrawn funds from his account or, if he did not have funds, charged his account and withdrawn them when he got funds.

Brownfield said he believed the detainer clerk's request that he fill out AWR forms was unlawful based on his research. Brownfield testified that a Kansas case—*State v. Lomon*, No. 116,497, 2017 WL 1535229 (Kan. App. 2017) (unpublished opinion)—says that the prison has no authority to make him pay for mailing his Detainers Act request and that once he wrote his request and provided the necessary information, the burden shifted to the prison officials to mail his request. We note that *Lomon* was decided about a year after Brownfield had filed his Form-9.

The State called Anna Laura Laws, the detainer clerk at Norton Correctional Facility, to testify. Laws explained that when an inmate submits a Form-9 request for the disposition of a detainer, she reviews the request to see if it is legitimate. If the inmate's request is legitimate, Laws returns the Form-9 with instructions for the inmate to fill out an AWR so that she can mail a detainer request to the county attorney and county court clerk informing them that the inmate wants to file for a 180-day writ under the Detainers Act.

Laws testified that Brownfield sent her a Form-9 in early March 2016 requesting a 180-day writ. She responded with instructions for filling out the AWRs but Brownfield never filled them out or contacted her with questions about payment of the mailing costs. Laws testified that if Brownfield had filled out the AWRs she would have filed the 180-day writ for him. Laws explained that she would still file a 180-day writ for an inmate even if they do not have funds in their account because indigent inmates also need to fill out an AWR. She explained that if Brownfield had funds in his account, he would have been charged for the mailing costs. If Brownfield did not have funds in his account, the

facility would pay for the mailing costs, but Brownfield would be charged if he ever received funds.

The district court admitted four documents into evidence:

(1) a copy of Brownfield's Form-9 with Laws' instructions on filling out an AWR;

(2) Laws' notes about her communication with Brownfield;

(3) a document explaining how to request a 180-day writ; and

(4) a portion of the Kansas Department of Corrections' Inmate Policy Procedure 05-108A relating to the mandatory disposition of detainers. A portion of IMPP 05-108A was highlighted, which provided that any request for the disposition of a detainer shall be sent by certified mail at the offender's expense unless the offender is indigent or the classification administrator approves an exception that is consistent with public safety and the offender's reentry into society.

Brownfield argued before the district court that he had substantially complied with the Detainers Act by simply sending a request to prison officials with his case number and the name of the county where the charges were pending. He maintained the prison officials had misled him by saying he had to file an AWR instead of telling him he could file the writ by addressing a written request to the district court and the county attorney. Brownfield contended the prison officials were placing a burden on him that is not authorized by the Detainers Act by requiring payment to file the writ. He asked the court to set aside his conviction and dismiss the case.

Unconvinced by Brownfield's arguments, the district court held that he had not substantially complied with the Detainers Act. Thus, the court had jurisdiction to accept his plea and to sentence him accordingly. There was no legal reason to dismiss this case.

In its opinion, the district court cited two regulations: (1) K.A.R. 44-12-601, which requires that inmates pay the cost of "legal" or "official" mail unless they are indigent; and (2) IMPP 05-108A, which specifies the procedure for handling detainer requests under the Detainers Act and requires that an inmate sign an AWR for each item of mail sent to the district court and prosecutor. The court held that these regulations, along with the Detainers Act, provided the procedure for Brownfield to have his case promptly disposed of.

The district court reasoned that this process of filing a request under the Detainers Act is analogous with filing a habeas corpus petition. The court noted that inmates filing habeas corpus petitions are not excused from complying with K.A.R. 44-12-601 or the relevant IMPP that addresses mailing costs. Brownfield was thus not excused from complying with the rules.

The district court distinguished this case from the *Lomon* decision. In *Lomon*, prison officials misled the defendant into believing his detainer request could not be processed until he paid filing fees. The district court noted that the *Lomon* court found that Lomon substantially complied because the prison authorities misled him, not because he could not be required to pay the cost of mailing his request as Brownfield argued.

The district court ruled that Brownfield was not misled; Laws told him that he needed to fill out the AWR forms, not that he had to pay before his request could be filed. The court noted that if Brownfield had signed the AWRs, Law could have completed all of the other steps and sent a "Written Request" to the district court and prosecutor. Instead, Brownfield refused to sign the AWRs, and the court and prosecutor received nothing.

In this appeal, Brownfield maintains that the district court erred when it held that he had not complied with the Detainers Act and that it should have dismissed the charge

5

against him because the court no longer had jurisdiction to decide the matter. This is a question of law.

*The law that guides us*

The Detainers Act provides the procedure for Kansas prisoners to request the disposition of pending charges within the state. "Once the prisoner properly initiates disposition of other pending charges under [the Detainers Act], the State's failure to bring those charges to trial within 180 days deprives the district court of jurisdiction. K.S.A. 22-4303." *State v. Burnett*, 297 Kan. 477, 448, 301 P.3d 698 (2013). Its purpose is "to prevent indefinite suspension of pending criminal charges while a prisoner is incarcerated on other charges" and "to prevent delays in the administration of justice by placing an obligation on the courts to hear cases within a reasonable amount of time." *Burnett*, 297 Kan. at 453.

Two statutes are pertinent here. K.S.A. 2020 Supp. 22-4301 provides:

"(a) Any inmate in the custody of the secretary of corrections may request final disposition of any untried indictment, information, motion to revoke probation or complaint pending against such person in this state. The request shall be in writing, addressed and delivered to the court in which the indictment, information, motion to revoke probation or complaint is pending, to the county attorney charged with the duty of prosecuting it and to the secretary of corrections. Such request shall set forth the pace of imprisonment."

K.S.A. 2020 Supp. 22-4302 provides:

"Upon receipt of a request made pursuant to K.S.A. 22-4301, and amendments thereto, the secretary of corrections shall promptly:

6

"(a) Certify the term of commitment under which the inmate is being held, the time already served on the sentence, the time remaining to be served, the good time earned, the time of parole eligibility of the inmate, and any decisions of the prisoner review board relating to the inmate;

. . . .

"(c) send by registered or certified mail, return receipt requested, one copy of the request and certificate to the court and one copy to the county attorney to whom it is addressed."

"[S]ubstantial compliance with the Act is sufficient to invoke its protections." *Burnett*, 297 Kan. at 453. The burden to send the certification and request to the court and county attorney shifts to prison officials once the inmate properly invokes the Detainers Act. *Burnett*, 297 Kan. at 454. When something the Detainers Act requires from the inmate is incorrectly performed by prison officials, compliance is not excused unless there is evidence of affirmative wrongdoing by the officials. That is because it is an inmate's duty to ensure prison officials perform correctly in addressing the inmate's detainer request. "Without clear proof of wrongdoing by the . . . [prison] officials, the [inmate] has not effectively shifted the . . . burden of substantial compliance away from [the inmate]." *Sweat v. Darr*, 235 Kan. 570, 578-79, 684 P.2d 347 (1984).

*We find that Brownfield did not substantially comply with the Detainers Act.*

There is much irrelevant discussion in the briefs about the cost of postage and the various rules and regulations adopted by the Secretary of Corrections. The facts reflected in this record demonstrate that Brownfield has not complied with the Detainers Act.

Here is what Brownfield sent to Law:

"I got a felony Detainer out of reno county 2016CR14 I would like 180 writ filed on my Behalf please per K.S.A. 22-4301 Thank you." Brownfield provided no other information on the form.

Here is what Laws, the detainers clerk, wrote to Brownfield in response:

"You will need to fill out 2 AWR's or $6.74 each as Attached Memo States. Return to me via your Unit Team Counselor. Once I receive them I will send you your paper work to sign."

She never heard from Brownfield again.

The money requested of Brownfield was for mailing copies of his detainer request to Reno County District Court and the Reno County Attorney. Laws' response to Brownfield also included the addresses of the Reno County Attorney and Reno County District Court Clerk. Brownfield never filled out the AWRs or contacted Laws again. In late March 2016 Brownfield left the Norton Correctional Facility. It is not clear in the record where he was transferred.

In the two statutes set out above, K.S.A. 2020 Supp. 22-4301 imposes on the prisoner the obligation of making a written request to the court in which criminal charges are pending to dispose of those charges. The prisoner is also required to notify the appropriate prosecutor of the prisoner's request. The second statute, K.S.A. 2020 Supp. 22-4302, requires the Secretary of Corrections to certify to the court where the charges are pending and the prisoner's terms of commitment, among other things. A copy of this certificate is to be sent to the appropriate county attorney, as well.

The law sets out a two-step procedure. The prisoner makes a written request to the appropriate court and prosecutor, and the Secretary of Corrections certifies to that court

8

and prosecutor the status of the prisoner. But no written detainer request has been made by Brownfield to any court or prosecutor in this case.

Brownfield contends the response from the clerk misled him and cites *Lomon* for support. He asks us to reverse the district court's order to the contrary. We are not sure that *Lomon* helps Brownfield that much.

The panel in *Lomon* recounted what had happened in that case:

"In this case, it is clear that Lomon was not in full compliance with the UMDDA. He filed a notice with officials at the prison where he was located but it was not addressed to the county attorney or the district court where the charges Lomon wanted addressed were filed. Apparently, the prison officials took no action on the request made by Lomon. However, when Lomon inquired why no action had been taken on his request, he was not told that his filing was inadequate. He was told that the filing was not being processed because Lomon was responsible for paying fees as a precursor to the processing of the request.

"The problem with this response is that there is no statutory authority in the UMDDA requiring the payment of any fee to pursue a 180-day writ. Furthermore, there is no reference made in the written response from the prison officials to any authority Lomon could refer to in order address the problem as outlined by the prison officials. Lomon made a subsequent inquiry on how to proceed and was given information that did not answer the inquiry. This led to apparent confusion on Lomon's part on how to proceed in that he felt the only way to move forward was to contact Morris County directly. There is some logic in Lomon's perception in that he had contacted Douglas County directly in regard to a 180-day writ and received a response." *Lomon*, 2017 WL 153229, at \*4.

In contrast, we see no misleading words or actions by the prison officials here. Everything Laws wrote was accurate and *no further inquiry was made by Brownfield*. He

let the matter drop. We see no action in this record where Brownfield sought to resolve this detainer until he filed his motion to withdraw his plea.

What happened here is far different than what occurred in *Lomon*, when the court held:

> "Lomon took action to attempt to pursue a 180-day writ and was misled on how to pursue that legal right. When he perceived that prison officials were not going to take action, he took unilateral action to pursue his right. In this case, Lomon took sufficient action to purse his right to a 180-day writ and the State impeded those efforts. Consistent with the reasoning in *Burnett*, Lomon's efforts should not be burdened with the State's actions. Lomon took sufficient steps to invoke the UMDDA." 2017 WL 1535229, at *4.

It is clear from Laws' reply to Brownfield's Form-9 that Brownfield knew more was required for a request to be sent on his behalf. Laws' instructions to Brownfield said that once he returned the AWRs she would send them back to him to sign. Even if Brownfield believed he did not lawfully have to sign the AWRs, he knew that no Detainers Act request was going to be sent on his behalf because Laws needed the completed AWRs before proceeding further.

Brownfield did not ask Laws any questions about the AWRs, how to get his Detainers Act request sent, or whether he had to pay for postage. Brownfield also did not contact Laws to tell her that he would not be filling out an AWR but still expected his request to be sent to the court and county attorney. Laws had no way to know whether Brownfield still wanted to make a Detainers Act request, was delayed for some reason, or had abandoned his request altogether. Instead, Brownfield waited until 180 days passed since he sent the Form-9 and tried to use his inaction to have the case against him dismissed. Although Brownfield says Laws had all the necessary information to send a Detainers Act request on his behalf, Brownfield did not provide her with that information.

10

Brownfield did not substantially comply with the requirements of the Detainers Act, which would have triggered the prison officials' duty to mail the required copies of the request and certification on his behalf. The district court, therefore, did not err by finding that Brownfield failed to substantially comply with the Detainers Act and denying his motion to dismiss.

Affirmed.