IN THE SUPREME COURT OF THE STATE OF KANSAS

Nos. 120,747
121,048

STATE OF KANSAS,
*Appellee*,

v.

THOMAS C. GRIFFIN II,
*Appellant.*


SYLLABUS BY THE COURT


1.

The Uniform Mandatory Disposition of Detainers Act (UMDDA), K.S.A. 2019 Supp. 22-4301 et seq.*,* provides an intrastate procedure for persons incarcerated in Kansas penal or correctional institutions to request final disposition of other criminal charges pending within the state. It is a statutory right, not a constitutional one.


2.

Once an inmate's request for disposition of detainer complies with statutory requirements and is received by the appropriate district court and county attorney from the Secretary of Corrections, the UMDDA gives the State 180 days to bring the pending criminal charge to trial unless that time is extended in accordance with statutory provisions. Otherwise, the court loses jurisdiction over the untried charge.


3.

To be complete, a written request for disposition of detainer under the UMDDA imposes responsibilities on both the inmate and prison officials, so when a court applies the UMDDA it examines the actions or inactions of both.

1

4.

When an inmate does not allege misfeasance or malfeasance by prison officials in the performance of their UMDDA duties, the statute's 180-day time requirement begins when an inmate's compliant request for final disposition is received by the appropriate district court and county attorney from the Secretary of Corrections.

Review of the judgment of the Court of Appeals in an unpublished opinion filed April 10, 2020. Appeal from Douglas District Court; PAULA B. MARTIN, judge. Opinion filed January 29, 2021. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, was on the briefs for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Thomas C. Griffin II appeals his conviction for methamphetamine possession after pleading no contest to that offense. He argues the district court lost jurisdiction before he entered his plea because he was not brought to trial as required by the Uniform Mandatory Disposition of Detainers Act, K.S.A. 2019 Supp. 22-4301 et seq. He does not claim prison officials acted inappropriately to thwart his efforts to invoke the UMDDA. Both the district court and a Court of Appeals panel rejected Griffin's claim. *State v. Griffin*, No. 120,747, 2020 WL 1814297, at *1 (unpublished opinion) ("Because a trial was set within 180 days of [receipt of the request by the district court and district attorney], the district court properly denied Griffin's motion to dismiss for violation of the Act."). We affirm.

2

The UMDDA plainly measures its 180-day requirement from the date the appropriate district court and county attorney receive a certification of the inmate's compliant request from the Secretary of Corrections. But Griffin claims his own substantial compliance should start the 180-day period without regard for the time it might legitimately take prison officials to perform their UMDDA duties. We hold his argument is without merit under the statutory scheme, K.S.A. 2019 Supp. 22-4301 et seq., and our caselaw. See, e.g., *State v. Burnett*, 297 Kan. 447, 301 P.3d 698 (2013). Griffin's 180 days began with the certification's undisputed date of receipt by the district court from the Secretary.

FACTUAL AND PROCEDURAL BACKGROUND

The State charged Griffin in Douglas County with driving with a suspended license and multiple drug and drug-paraphernalia possession offenses. Shortly after these charges were filed, he was committed to the Kansas Department of Corrections on an earlier criminal sentence imposed in another county.

On June 27, 2018, Griffin filed a pro se pleading he entitled "K.S.A. 22-4301 Request for Mandatory Disposition of Detainer Act." He asked the Douglas County District Court to "grant a final disposition of any untried . . . complaint" pending against him in the county within 180 days. This document stated Griffin was an inmate at Norton Correctional Facility serving a 43-month sentence with 20% good-time credit and a "projected outdate of 10/18/2020." He addressed his request to the district court, district attorney, and Secretary of Corrections. But the document's certificate of service only showed service on the district court and district attorney. By letter dated July 3, 2018, the Douglas County District Attorney's office advised Griffin it had received his June 27 request and noted he needed to contact prison officials to "request the proper documents be prepared and delivered."

3

On July 18, 2018, the Douglas County District Court filed a document received from the Secretary of Corrections, executed by both Griffin and a Norton Correctional Facility records clerk. It included Griffin's statement giving his commitment date, his sentence, his postrelease supervision term, the time served on the sentence, the time remaining on the sentence, and actions taken by the Kansas Parole Board. The records clerk confirmed those statements based on her review of Griffin's records with the Department of Corrections. In a separate document signed by Griffin, he stated he was applying to the district attorney to either drop the detainer or try him within the statutorily prescribed time. This separate document showed July 6 as a "Date of Application" and "06/18/2018" as a "Date of Issue"—which actually was July 18, 2018.

On November 15, 2018, the Douglas County District Court held a preliminary hearing during which it bound Griffin over for trial on the Douglas County charges. It set trial for January 7, 2019, based on January 14 as the deadline "date for speedy trial." The court set a January 3 status conference.

A day before the status conference, Griffin moved to dismiss his criminal charges, arguing the State failed to bring him to trial within the 180 days required by the UMDDA. He claimed the time started running earlier than July 18—on either June 27, the date of his pro se request, or July 6, the date he executed the documents ultimately certified and filed with the district court. He argued he had substantially complied with what the UMDDA required from him by either date. In his view, his personal substantial compliance shifted the burden to corrections officials and triggered the 180 days without regard for the time it might take prison officials to perform their UMDDA duties. He argued prison officials could not deprive him of his right to be tried within the UMDDA's time frame by the delay attributable to the actions imposed on them to certify his request.

4

The district court heard Griffin's motion to dismiss on January 16 and denied it the same day. The court ruled the 180-day clock began when the court received the Secretary's certification, i.e., July 18, and that set the UMDDA deadline as January 14, 2019. The court rejected his argument that prison officials necessarily would have known about his UMDDA request when he asked for postage to mail the pro se documents, or when the document executed by Griffin and the records clerk was forwarded to the Secretary for ultimate submission to the district court and district attorney.

Two days after that ruling, January 18, Griffin pled no contest to one count of possession of methamphetamines in exchange for the State dismissing the remaining counts and agreeing to join Griffin's request for a downward durational departure. The court accepted the plea and found Griffin guilty. In February 2019, the court granted him a downward durational departure and sentenced him to 15 months' imprisonment. It ordered the sentence to run consecutive to those in three other cases.

Griffin filed two appeals that were consolidated. They presented only one argument:  The district court lost jurisdiction under the UMDDA because Griffin had taken all steps within his power no later than July 6, 2018, to invoke his speedy trial rights. A Court of Appeals panel held there was no UMDDA violation. *Griffin*, 2020 WL 1814297, at *3-4.

The panel noted the UMDDA's plain language starts the 180-day clock when the certificate is received from the Secretary of Corrections by the appropriate district court and county attorney. It agreed July 18, 2018, was that date of receipt. The panel acknowledged our caselaw allows an inmate's substantial compliance with the UMDDA to trigger its time requirements earlier when "a public official's negligence" thwarts an inmate's effort to invoke the UMDDA's speedy trial rights, but it distinguished that circumstance because in this case both Griffin and the Secretary "substantially

5

complie[d]" with the UMDDA. *Griffin*, 2020 WL 1814297, at *3. The panel further observed Griffin actually entered his plea after January 14, but held this was of no consequence because it "presum[ed] that the time to deal with [the motion to dismiss] filed by the defendant only shortly before trial should be charged against the defendant." 2020 WL 1814297, at *4.

We granted Griffin's petition for review, challenging the panel's rejection of his claim that an inmate's substantial compliance triggers the 180-day statutory deadline without regard for the time it might legitimately take prison officials to perform their UMDDA duties. His petition does not argue the panel erred in how it addressed the time after January 14 to hear Griffin's motion to dismiss and accept his plea.

Jurisdiction is proper for this petition for review. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review); K.S.A. 2019 Supp. 22-3602(a) (no right to appeal judgment of conviction entered upon plea except to raise "jurisdictional or other grounds going to the legality of the proceedings").

STANDARD OF REVIEW

We are asked to interpret and apply the UMDDA based on undisputed material facts. Statutory interpretation and a determination of jurisdiction involve questions of law over which the scope of review is unlimited. *Burnett*, 297 Kan. at 451. When interpreting a statute, a court begins with legislative intent. The best and safest rule for discerning that intent is the statute's plain language. A court does not move on to consider tools of statutory construction unless the statutory language is unclear or ambiguous. *State v. Davis*, 312 Kan. 259, 267, 474 P.3d 722 (2020).

A court construes criminal statutes strictly in the defendant's favor, and any reasonable doubt about a statute's meaning must be decided in the accused's favor. But this is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative intent. *Burnett*, 297 Kan. at 451.

ANALYSIS

The UMDDA is a Kansas intrastate procedure permitting persons imprisoned in the state to request final disposition of other Kansas charges pending against them. *Sweat v. Darr*, 235 Kan. 570, Syl. ¶ 3, 684 P.2d 347 (1984); K.S.A. 2019 Supp. 22-4301(a). It is a statutory right, not a constitutional one. *Burnett*, 297 Kan. at 453. When "a prosecution is pending against an accused confined in a state penal institution for another offense, the definition of speedy trial and the procedure for relief are governed solely by the provisions of the act." *State v. Calderon*, 233 Kan. 87, 95-96, 661 P.2d 781 (1983).

The UMDDA's purpose is "to prevent indefinite suspension of pending criminal charges while a prisoner is incarcerated on other charges" and "to prevent delays in the administration of justice by placing an obligation on the courts to hear cases within a reasonable amount of time." *Burnett*, 297 Kan. at 453. For an inmate in Department of Corrections' custody to make such a request, it "shall be in writing, addressed and delivered to the court in which the . . . complaint is pending, to the county attorney charged with the duty of prosecuting it and to the secretary of corrections. Such request shall set forth the place of imprisonment." K.S.A. 2019 Supp. 22-4301(a).

But the inmate's request must flow through the Secretary of Corrections, so once the Secretary receives the inmate's request, the Secretary must "promptly" inform the inmate in writing of "the source and nature of any untried indictment, information,

7

motion to revoke probation or complaint against such inmate of which the Secretary has knowledge or notice, and of such inmate's right to make a request for final disposition thereof." K.S.A. 2019 Supp. 22-4301(b). The Secretary must also "promptly" certify the statutorily required information to the district court and county attorney. K.S.A. 2019 Supp. 22-4302. For crimes committed after the Kansas Sentencing Guidelines Act's 1993 effective date, such as Griffin's, the Secretary must certify the length of time the inmate has served on the sentence's prison portion, any earned good time, and the projected release date to begin the postrelease supervision term. K.S.A. 2019 Supp. 22-4302(b).

Finally, the Secretary must promptly "send by registered or certified mail, return receipt requested, one copy of the request and certificate to the court and one copy to the county attorney to whom it is addressed." K.S.A. 2019 Supp. 22-4302(c). Once those documents are received, the UMDDA then places time constraints on the State's ability to pursue the inmate's criminal complaint:

"(b)(1) *Following the receipt of the certificate by the court and county attorney from the secretary of corrections*, the indictment, information or complaint shall be brought to trial, or the motion to revoke probation shall be brought for a hearing:

(A) If the inmate has one detainer, within 180 days;

(B) if the inmate has detainers from multiple jurisdictions, the first detainer shall be brought within 180 days and each subsequent detainer shall be brought within 180 days after return of the inmate to the secretary or transportation of the inmate to the jurisdiction following disposition of a previous detainer; or

8

(C) within such additional time as the court for good cause shown in open court may grant." (Emphasis added.) K.S.A. 2019 Supp. 22-4303(b)(1).

But the time calculation does not run "any time during which a continuance or delay has been requested or agreed to by the inmate or the inmate's attorney[,]" during which a motion to determine the inmate's competency is pending, or during which the inmate is determined incompetent to stand trial. K.S.A. 2019 Supp. 22-4303(b)(2)-(3). Otherwise, failure to bring the case to trial within the required time under the UMDDA is fatal to the prosecution: "If, after receipt of such certificate, the . . . complaint is not brought to trial within the time period specified in this subsection, . . . no court of this state shall any longer have jurisdiction thereof, nor shall the untried . . . complaint be of any further force or effect, and the court shall dismiss it with prejudice." K.S.A. 2019 Supp. 22-4303(b)(4). See *Pierson v. State*, 210 Kan. 367, 375-76, 502 P.2d 721 (1972) (holding trial court properly dismissed charges when the State failed to try inmate within the time limitation after inmate complied with all the UMDDA's requirements).

Griffin challenges his start date for calculating the 180 days. He claims his time began earlier than the date of the certificate's receipt by the district court and county attorney by focusing only on his actions in the request process. But to be complete, a UMDDA request requires contributions from both the inmate and corrections officials, so the caselaw applying the UMDDA examines both. See *Sweat*, 235 Kan. at 579 (no substantial compliance when defendant failed to show prison officials' misfeasance or malfeasance in mistakenly addressing request, which task was not their responsibility); *Burnett*, 297 Kan. at 455 (inmate's otherwise valid request may be deemed substantial compliance with the UMDDA's requirements if the defects resulted from misfeasance or malfeasance of prison officials).

9

Any exception to statutory compliance requires a court to first decide whether the inmate followed the UMDDA's requirements. In *Ekis v. Darr*, 217 Kan. 817, 822, 539 P.2d 16 (1975), an inmate's motion did not start the clock under the UMDDA's parallel act for out-of-state prisoners, the Interstate Agreement on Detainers, when the motion was filed in the wrong court; was not accompanied by a certificate from custodial officials; was sent by ordinary mail rather than first-class mail as required; "the motion gave no hint that it was meant to be" a request for disposition under the agreement; and the inmate did not waive extradition as the agreement required. The inmate later testified he had not heard of the interstate agreement when he filed his motion, although a deputy county attorney had sent him a letter informing him about the deficiencies in his notice and referring him to the agreement after it was filed. The *Ekis* court held the motion did not substantially comply, despite the first four deficiencies being "somewhat technical." 217 Kan. at 823. It observed that, "[i]t would have taken very little effort on Ekis' part to ascertain and cure the deficiencies in his motion," in response to the attorney's letter, "but he chose not to do so. He cannot, under these circumstances, allege 'substantial compliance' with the Agreement." 217 Kan. at 825.

Similarly, when something the UMDDA requires from the inmate is mistakenly or incorrectly performed by prison officials without evidence of "affirmative wrongdoing" by those officials, that mistake does not excuse compliance. *Sweat*, 235 Kan. at 578-79. This is because it is the inmate's duty to ensure prison officials perform correctly in addressing the inmate's request under the UMDDA. Therefore, "[w]ithout clear proof of wrongdoing by the . . . officials, the [inmate] has not effectively shifted the . . . burden of substantial compliance away from himself." 235 Kan. at 579.

But when the inmate does what the UMDDA requires, statutory compliance may be excused when a defect arises because prison officials failed to do those things required of them. In those instances, the UMDDA's time limit may be triggered because it is a

"right to which [the inmate] 'cannot be deprived by the laches of public officials.'" *Burnett*, 297 Kan. at 455. In other words, once the inmate meets the inmate's burdens, compliance may be excused when a defect arises because of a lack of compliance with the things to be done by prison officials. In those instances, the 180-day time limit may have been triggered because it is the inmate's right that "'cannot be deprived by the laches of public officials.'" *Burnett*, 297 Kan. at 455.

In *Burnett*, the court held the 180-day time limit began when the inmate submitted his request to the district court, county attorney, and Department of Corrections, even though the Department failed to provide its UMDDA-required certification. 297 Kan. at 454-55. The court reasoned that both the UMDDA and caselaw imposed the burden on prison officials "to send the certification to the district court and county attorney" once "the facts establish that the prisoner properly invoked the UMDDA." 297 Kan. at 454. "Accordingly, if there was a deficiency in the execution of those statutory responsibilities, that failure is not attributable to [the inmate], nor should it prejudice his ability to invoke the statute." 297 Kan. at 455.

We hold the 180-day time limit did not begin in Griffin's case until the district court received the certificate on July 18, 2018, from the Secretary, notwithstanding the fact Griffin may have performed all steps required of him earlier. We note that once prison officials received Griffin's request—on July 6 at the latest—they prepared the certification within two weeks and sent it to the court. And Griffin does not claim they inappropriately discharged their statutory obligation to "promptly" process the certification.

In the end, Griffin simply attempts to stretch *Burnett* too far to establish a rule that the inmate's substantial compliance always starts the UMDDA's 180-day time limit despite the plain statutory language. He compares this to the prison mailbox rule under

11

which a defendant's pleading is considered "filed" when submitted to prison authorities for mailing. See *Wahl v. State*, 301 Kan. 610, 615, 344 P.3d 385 (2015). But the UMDDA and its caselaw turn on both the inmate's actions and those of prison officials, and the statute controls absent some claim that prison officials thwarted the inmate's request by misfeasance or malfeasance.

Under the statute's plain language, the 180-day clock does not begin to run until the "receipt of the certificate by the court and county attorney from the secretary of corrections." K.S.A. 2019 Supp. 22-4303(b)(1). And the statute is even more explicit now than it was when *Burnett* was decided because the 2016 Legislature inserted specific language starting the UMDDA's 180-day clock on receipt of the Secretary's certificate, which ensures any request for disposition flows through the Secretary. L. 2016, ch. 32, § 3.

Finally, we note the panel "[found] no violation of the Act" after "presum[ing]" a 14-day period between Griffin filing his motion to dismiss and the court resolving it would be "charged against" him. *Griffin*, 2020 WL 1814297, at \*4; see K.S.A. 2019 Supp. 22-4303(b)(1)(C), (b)(2). Griffin's petition for review does not challenge this aspect of the panel's decision, so we express no opinion about that.

Affirmed.