NOT DESIGNATED FOR PUBLICATION

No. 125,357

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHN DAVID SMALLING JR.,
*Appellant*.


MEMORANDUM OPINION

Appeal from Crawford District Court; MARY JENNIFER BRUNETTI, judge. Submitted without oral argument. Opinion filed July 5, 2024. Dismissed in part, vacated in part, and remanded with directions.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.


Before ATCHESON, P.J., ISHERWOOD and HURST, JJ.


HURST, J.: While being held in the custody of the Kansas Department of Corrections (KDOC), John David Smalling Jr. received detainers for cases in multiple counties, including three cases in Crawford County. During Smalling's subsequent transfers in and out of KDOC custody, his Crawford County detainers were cancelled but later refiled. After learning of the refiled Crawford County detainers, Smalling filed an internal KDOC form requesting a 180-day writ pursuant to the Uniform Mandatory Disposition of Detainers Act (UMDDA), K.S.A. 22-4301 et seq., but he failed to pay the postage costs the KDOC said was required, so the writs were never mailed.

1

Years later, Smalling sought to dismiss the Crawford County charges in this case, claiming the State violated the UMDDA. After an evidentiary hearing, the district court dismissed Smalling's UMDDA claims. Thereafter, pursuant to a plea agreement, the State dismissed two of the Crawford County charges and Smalling pled no contest to two counts of forgery. After the sentencing hearing where the district court sentenced Smalling according to the plea agreement, the district court assessed a DNA database fee against Smalling in its sentencing journal entry. Smalling appeals the district court's dismissal and DNA database fee assessment.

This court lacks jurisdiction to address Smalling's UMDDA claims challenging his convictions because he pled no contest to the charges; therefore, his UMDDA claims are dismissed. However, the district court erred in assessing the DNA database fee against Smalling without addressing it at the sentencing hearing. The district court's assessment of the DNA database fee is therefore vacated, and the case is remanded for consideration of whether to assess the fee.

FACTUAL AND PROCEDURAL BACKGROUND

In February 2012, Smalling was charged in Crawford County with theft, forgery, and criminal use of a financial card for acts he allegedly committed in December 2011. Smalling appeared in September 2012 on the charges, but before the charges could be resolved, Smalling was convicted in another case and sentenced to the custody of the KDOC in March 2013. While incarcerated, Smalling was served with detainers for cases in four counties: three in Crawford County, including this case, and additional detainers for cases in Sedgwick, Reno, and Cherokee Counties.

Smalling was released by the KDOC into the custody of Sedgwick County pursuant to that county's detainer in July 2013. While being processed out of KDOC custody, Smalling received documentation that his detainers for all three Crawford

2

County cases had been cancelled. All three detainer cancellations indicated that the cancellation was due to Smalling's transfer to Sedgwick County pursuant to that county's detainer.

In September 2013, Smalling was returned to KDOC custody to begin serving a new sentence. When that happened, Crawford County filed new detainers on him for all three pending cases. Smalling was not notified of these new Crawford County detainers and did not learn about them until almost a year later when his unit team leader gave him copies in September 2014.

Upon learning of the detainers, Smalling filed an internal KDOC form requesting a 180-day writ under the UMDDA. Smalling's unit team leader prepared the requested 180-day writs for all three Crawford County cases, which Smalling signed. His unit team leader later returned and told Smalling that he had to pay the $6.95 in postage to send each of the writs by certified mail. Smalling did not pay the postage, so the writs were never mailed. The signed writs were placed in Smalling's KDOC file along with the following note:

> "180 Day Writ was done on 10/24/14. Inmate signed but refused to sign the SPO's. I received the signed 180 Day Writ back on 10/28/14 and put it in my file. I can not [*sic*] send the Writ out without the SPO's as they are Certified letters to the DA and Clerk of the District Court. Mr. Smalling did not want to spend the money on the postage."

In June 2017, as Smalling was preparing to be released from KDOC custody, he filed a request with the detainer clerk to determine whether he had any outstanding warrants. The detainer clerk responded that Smalling had an active warrant and detainer in Cherokee County but no other active detainers. In September 2017, Smalling was formally notified of the Crawford County detainers—about four years after they were filed. The written detainer notifications with which Smalling was served also informed

3

Smalling of his right to request disposition of the pending charges as required by the UMDDA. See K.S.A. 22-4301(b).

In January 2021, Smalling moved to dismiss the charges in this case under the UMDDA for two reasons. First, Smalling argued the KDOC failed to properly notify him of the detainers within one year after the detainers were filed. Second, Smalling argued his substantial compliance with the UMDDA in October 2014 triggered the 180-day period in which he could be brought to trial on the charges, and the State failed to bring him to trial within that time.

The district court held an evidentiary hearing on Smalling's motion to dismiss at which Smalling testified about his conversation with his unit team leader concerning his alleged inability to pay the certified mail postage costs:

"So we got Form 9s where we request the records to have the 180-day writ done. On 10-24 I sent the request. On 10-28 my unit team came to me with the three Crawford County writs. I signed everything, he left.

"He came back after lunch and said I needed to pay postage, 6.95 times three. At that time, I was either indigent or I didn't—I know I didn't have the funds to even pay for that at the time. And I asked them can I do regular mail and he said, '[N]o, there is nothing I can do for you further on this, you have to get with records. So I'm going to send you back to the records department.'

"And so at that time, the way I understood it, was if I didn't have the money, then it wouldn't be processed. They didn't explain to me if I was indigent or that they could still charge my account, and so when she says I refused, I didn't ever refuse. I didn't understand the process of how this works.

"So at no time did I ever want to cancel my writ or did I say I refuse or post—I just didn't have the funds."

4

Smalling also testified about how he would receive money while incarcerated, how he used that money, and that he did not believe he had the amount the KDOC employee told him was necessary to mail the writs.

The State called a KDOC employee in charge of classification and population management as a witness. The KDOC employee explained why Smalling's Crawford County detainers were cancelled upon his release from the KDOC into the custody of Sedgwick County: "[W]henever we release somebody, we cancel all the detainers that we have because we've notified everybody. So when he was released to Sedgwick County on one of his detainers, the rest of his detainers in our system also got canceled."

The KDOC employee further testified that the writs were never sent because the administrator "was holding on to it until [Smalling] signed his special purchase order, which he did not do." The employee explained it was KDOC policy to require inmates to pay for certified postage when they have money in their account. However, according to the KDOC employee, "If they are indigent and have no money, then we sent the—we basically put a hold—a loan on their account basically to send it out. And then when they did receive money, it will go towards those funds." The KDOC employee testified that she did not "think [Smalling] was indigent at the time" because he had ample money in his account to cover the postage costs. The KDOC employee stated Smalling signed the writs but "he did not sign the special purchase order which is the form that allows the business office to take the money off the account." The employee further testified that there was no indication in her records that Smalling inquired about sending the writs by regular mail.

The district court took the matter under advisement and issued a written order denying Smalling's motion to dismiss. The district court reasoned:

"Applying the substantial compliance framework discerned from *Burnett*, *Foster*, *Eaton* and *Lomon* to the present case, Smalling has failed to produce any evidence of testimony that the prosecutor was made aware of his intent to trigger the UMDDA. Unlike the instances wherein the defendant either mailed by regular postage to the district court and/or prosecutor's office, thus alerting the prosecutor to the filings—there is absolutely nothing in the record to establish that the Crawford County Attorney's Office had any notice that Smalling was attempting to resolve his pending criminal cases in the county. Substantial compliance surely requires that the prosecutor have some knowledge that either the Department of Corrections has cancelled their requested detainer or notice that the defendant is seeking resolution of a pending case.

"It is the opinion of this court that at a minimum a defendant would have the burden to demonstrate that the prosecutor was aware that the defendant was seeking to resolve his or her pending criminal cases before that defendant could claim he/she was entitled to dismissal for failure to comply with the UMDDA. To permit otherwise appears to be in contravention of the applicable statute and would punish the State and or purported victim while rewarding the defendant. This court does not believe the UMDDA is weighted in favor of a defendant that failed to appear in court when the State instituted lawful proceedings and then be rewarded because the prosecutor was unaware that he/she purportedly sought resolution of their pending cases.

"Additionally, it should be noted that the defendant failed to provide a copy of the purported document completed in an attempt to resolve the criminal cases. This omission serves to further handicap the defendant['s] claim, since the court is not able to review the document to determine compliance with the mandates of the UMDDA, if the court was persuaded that the prosecutor had notice—which again has not been demonstrated.

"In deciding this case, the court reviewed the Kansas Supreme Court's decision in *State v. Griffin*, 312 Kan 716; 479 P.3d 937 (2021). The Court in *Griffin* addressed 'substantial compliance' on behalf of an inmate in the context of the UMDDA when a prison official mistakenly or incorrectly performs an act and that act constitutes 'affirmative wrongdoing' that could excuse compliance. The court is aware that Smalling was attempting to shift the burden of substantial compliance away from himself and

6

claim the prison official's actions of not mailing to the court and prosecutor his purported filing entitles him to relief, i.e., dismissal. The problem for Smalling is that there is no evidence before the court that would support a clear proof of wrongdoing by the prison official's [*sic*] and so he has failed to shift the burden of substantial compliance away from himself.

"This court considering the evidence and record before it has determined that the prosecutor did not have any notice of Smalling's desire to resolve his criminal cases, the defendant did not establish clear proof of wrongdoing by the prison official[,] and further the defendant failed to introduce the purported written document that might have triggered relief under the UMDDA. In sum, this court does not believe that the statute provides the relief sought by the defendant in his particular situation and therefore the Defendant's request to dismiss is denied."

Smalling ultimately pled no contest to two counts of forgery pursuant to a plea agreement. At the sentencing hearing in October 2022, the district court assessed several fees against Smalling but did not mention or address a DNA database fee. Yet the district court subsequently assessed the DNA database fee in its sentencing journal entry. Smalling appealed.

DISCUSSION

Smalling alleges the district court erred in not dismissing his charges because the State violated the UMDDA. This court notes that in 2016 the name of the statute was changed to the Mandatory Disposition of Detainers Act (MDDA). See K.S.A. 22-4308. Even so, most appellate opinions continue to refer to the statute as the UMDDA. Therefore, for consistency, this opinion will refer to the Act as the UMDDA. Under the version of the UMDDA in effect at the time Smalling signed his writs:

"(a) Any person who is imprisoned in a penal or correctional institution of this state may request final disposition of any untried indictment, information, motion to revoke probation or

7

complaint pending against such person in this state. The request shall be in writing addressed to the court in which the indictment, information, motion to revoke probation or complaint is pending and to the county attorney charged with the duty of prosecuting it, and shall set forth the place of imprisonment." K.S.A. 2014 Supp. 22-4301(a).

While the inmate bears the burden to satisfy the UMDDA requirements, the UMDDA can be invoked by an inmate's substantial compliance with its provisions. See *State v. Burnett*, 297 Kan. 447, 453-55, 301 P.3d 698 (2013).

Smalling claims the district court erred when it denied his motion to dismiss the charges in this case under the UMDDA and when it assessed the DNA database fee in its sentencing journal entry. Before addressing the substance of Smalling's claims, this court must address the parties' dispute over this court's jurisdiction over his first claim.

I. THIS COURT LACKS APPELLATE JURISDICTION TO CONSIDER SMALLING'S CHALLENGES AGAINST HIS CONVICTIONS UNDER THE UMDDA

The State argues that this court lacks jurisdiction to address Smalling's UMDDA claims because he pled no contest to the charges and is barred from directly appealing his convictions. See *State v. Smith*, 311 Kan. 109, Syl. ¶ 1, 456 P.3d 1004 (2020) ("Under K.S.A. 22-3602(a), a Kansas appellate court does not have jurisdiction to review a defendant's conviction from a guilty or nolo contendere plea."). "No appeal shall be taken by the defendant from a judgment of conviction before a district judge upon a plea of guilty or nolo contendere, except that jurisdictional or other grounds going to the legality of the proceedings may be raised by the defendant as provided in K.S.A. 60-1507." K.S.A. 22-3602(a). Smalling argues that jurisdictional challenges like his are an exception to the general rule that bars appeals from convictions resulting from guilty or no-contest pleas and, alternatively, that this court should reach the merits of his claim to correct his allegedly illegal sentence under K.S.A. 22-3504. Whether appellate

8

jurisdiction exists is a question of law over which this court exercises unlimited review. *State v. McCroy*, 313 Kan. 531, 533, 486 P.3d 618 (2021).

First, Smalling's argument that his UMDDA claims may be brought at any time under K.S.A. 22-3504 is unavailing. While "[t]he court may correct an illegal sentence at any time while the defendant is serving such sentence," Smalling does not allege his *sentence* is illegal. See K.S.A. 22-3504(a). Rather, Smalling challenges his *convictions*. The Kansas Supreme Court rejected a similar argument in *Smith* where the defendant appealed his convictions after pleading guilty, arguing the district court lacked jurisdiction to convict him. *Smith*, 311 Kan. at 110. The Kansas Supreme Court rejected the claim that his appeal was permitted under K.S.A. 22-3504 "because Smith is not challenging his sentence; he is challenging his conviction." 311 Kan. at 119. The court explained that "'one who pleads guilty or nolo contendere is not precluded by K.S.A. 22-3602 from taking a direct appeal *from the sentence imposed*.'" 311 Kan. at 119 (quoting *State v. Marinelli*, 307 Kan. 768, 778, 415 P.3d 405 [2018]). Thus, if Smalling actually challenged his *sentence*, his challenge could be brought under K.S.A. 22-3602. As in *Smith*, because Smalling appeals his convictions rather than his sentence, K.S.A. 22-3504 fails to establish this court's jurisdiction to hear his direct appeal.

In *Smith*, the Kansas Supreme Court held that defendants cannot appeal their convictions *even on jurisdictional grounds* if they pled guilty or no contest. 311 Kan. at 115. Under K.S.A. 22-3602(a), this court lacks jurisdiction over direct appeals from guilty or no-contest pleas, and issues regarding "jurisdictional or other grounds going to the legality of the proceedings may be raised" in a K.S.A. 60-1507 motion. The court held that K.S.A. 22-3602(a) prohibits direct appeals of convictions—even on jurisdictional grounds—resulting from guilty or no-contest pleas. 311 Kan. at 114-15. To allow otherwise would "make it too easy to evade the statutory prohibition against appeals after a guilty plea." *State v. Jones*, 318 Kan. 600, 614, 545 P.3d 612 (2024). Therefore, when a defendant pleads guilty or no contest and subsequently wants to

challenge their conviction on jurisdictional grounds, they must file a K.S.A. 60-1507 motion or seek to withdraw their plea. See *Smith*, 311 Kan. at 115-19.

Yet, as Smalling argues, the Kansas Supreme Court has considered the merits of a defendant's UMDDA claims on direct appeal even when the defendant's conviction resulted from a no-contest plea. See *State v. Griffin*, 312 Kan 716, 717-20, 479 P.3d 937 (2021). In *Griffin*, the court did not analyze jurisdiction but simply stated that "[j]urisdiction is proper for this petition for review" with an accompanying citation of K.S.A. 2019 Supp. 22-3602(a) and a parenthetical stating, there is "no right to appeal judgment of conviction entered upon plea except to raise 'jurisdictional or other grounds going to the legality of the proceedings.'" 312 Kan. at 720. Nothing in the court's decision in *Griffin* demonstrates an intent to abrogate or distinguish *Smith*.

In *Smith*, the court directly and exhaustively analyzed whether jurisdictional challenges against convictions can be raised on direct appeal following a guilty or no-contest plea. That authoritative analysis applies here. While the court specifically addressed a UMDDA claim in *Griffin,* it did not indicate an intent to depart from its clear holding in *Smith*. Moreover, the Kansas Supreme Court has since reaffirmed *Smith*'s holding that appellate courts lack jurisdiction over even jurisdictional challenges to convictions resulting from guilty or no-contest pleas. *Jones*, 318 Kan. at 602. This court lacks jurisdiction to address Smalling's claim that the district court lacked jurisdiction under the UMDDA to convict him. Smalling's challenges against his convictions under the UMDDA are therefore dismissed for lack of subject matter jurisdiction.

II.    THE DISTRICT COURT ERRED IN ASSESSING THE DNA DATABASE FEE AGAINST SMALLING IN THE SENTENCING JOURNAL ENTRY

Smalling also argues that the district court erred in assessing the DNA database fee against him in the sentencing journal entry without orally addressing the fee at the

10

sentencing hearing. "A sentence is effective when pronounced from the bench." *State v. Weekes*, 308 Kan. 1245, 1249, 427 P.3d 861 (2018). "During sentencing, the judge's oral pronouncement is controlling, not the journal entry. Thus, any journal entry variance from a judge's oral pronouncement during sentencing is a clerical error that may be corrected at any time. [Citations omitted.]" *State v. Edwards*, 309 Kan. 830, 835, 440 P.3d 557 (2019). In *Edwards*, the Kansas Supreme Court ordered the district court to correct the journal entry to reflect the district court's oral pronouncement when the district court stated at sentencing it was waiving a $100 Board of Indigents' Defense Services administrative fee but subsequently assessed that fee in the journal entry. 309 Kan. at 835-36.

While the DNA database fee is fixed and generally required, the district court has the authority to reduce or waive the fee under certain limited circumstances. See K.S.A. 75-724(b) ("The court shall order such fees regardless of whether the person's DNA sample was already on file . . . unless the person can prove to the court that the person: (1) Has paid such fees in connection with a prior conviction or adjudication; and (2) did not submit specimens of blood or an oral or other biological sample . . . for the current offense of conviction or adjudication."); K.S.A. 75-724(c) ("The court shall not lessen or waive such fees unless the court has determined such person is indigent and the basis for the court's determination is reflected in the court's order.").

The DNA database fee is not always required. Unlike the facts in *Edwards*, the district court here did not make an oral pronouncement about the DNA database fee that was inconsistent with its written journal entry. Rather, the district court made *no* oral pronouncement—neither assessing nor waiving the fee—and thus the court erred. This court cannot merely order the district court to amend its journal entry to reflect its oral pronouncement. Instead, the district court should have an opportunity to address whether the DNA database fee should be assessed, reduced, or waived. The district court's

11

assessment of the DNA database fee in the journal entry is therefore vacated, and the case is remanded for consideration of whether to assess the fee.

CONCLUSION

Smalling pled no contest, and therefore this court lacks jurisdiction to consider his direct challenges to the district court's jurisdiction to impose those convictions under the UMDDA. However, this court agrees with Smalling that the district court erred in assessing the DNA database fee in its journal entry because it did not address that fee during its oral pronouncement at sentencing. Smalling's claims challenging his convictions are dismissed; the district court's assessment of the DNA database fee in the journal entry is vacated; and the case is remanded for consideration of whether to assess the fee.

Dismissed in part, vacated in part, and remanded with directions.

12