IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 125,455

STATE OF KANSAS,
*Appellant*,

v.

MATTHEW MUNOZ,
*Appellee.*

SYLLABUS BY THE COURT

1.

When an inmate does what the Uniform Mandatory Disposition of Detainers Act (MDDA) requires, strict statutory compliance may be excused if a defect arises because prison officials failed to do the things required of them.

2.

Under the MDDA's plain language, the 180-day clock does not begin to run until the receipt of the certificate by the court and county attorney from the Secretary of Corrections.

Review of the judgment of the Court of Appeals in an unpublished opinion filed September 29, 2023. Appeal from McPherson District Court; JASON R. LANE, judge. Oral argument held March 27, 2024. Opinion filed November 27, 2024. Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed, and the case is remanded with directions.

*Steven J. Obermeier*, assistant solicitor general, argued the cause, and *Derek Schmidt*, former attorney general, and *Kris W. Kobach*, attorney general, were with him on the briefs for appellant.

1

*Patrick H. Dunn*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.:  The Uniform Mandatory Disposition of Detainers Act (MDDA), K.S.A. 22-4301 et seq., provides a way for people held in Kansas penal or correctional institutions to request final disposition of other criminal charges pending against them within the state. Matthew Munoz was one such person. While he was being held in the Mitchell County jail, he tried to invoke the provisions of the MDDA to dispose of a theft charge pending against him in McPherson County. There is no dispute that he filed this request with the McPherson County District Court. There is no dispute that the Secretary of Corrections did not have notice of the filing and did not issue a statutory certificate. But it is also not disputed that the McPherson County Attorney did have actual notice of the filing. Finally, there is no dispute that McPherson County failed to bring the theft charge to trial within the statutorily prescribed 180 days.

The parties have contested—throughout the case—whether Munoz was in the custody of Kansas Department of Corrections (KDOC) when he filed his MDDA request and whether the steps he took were sufficient to qualify as substantial compliance. At a hearing on Munoz' motion to dismiss the theft charge for untimeliness, he testified that while he was physically in the Mitchell County jail when he filed his MDDA request, he had received a KDOC warrant that same day. Munoz also testified that after he filed his MDDA request, he received a letter from the McPherson County Attorney that told him the county attorney had received the MDDA request and would act on it as soon as Munoz was transferred from the Mitchell County jail to a KDOC facility. He understood this to mean that he had substantially complied with the MDDA. Neither the KDOC warrant nor the letter from the county attorney were entered into evidence in the trial court, and they are not included in the record on appeal.

Despite these evidentiary gaps, the trial court ruled that the evidence was sufficient to show that Munoz had substantially complied with the MDDA, and that the State was time-barred from continuing to prosecute the theft charge. The State appealed. The Court of Appeals reversed the dismissal, holding that the record did not contain sufficient evidence to show Munoz was in the custody of KDOC when he filed his MDDA motion and that actual notice on the part of the McPherson County Attorney was not sufficient to establish substantial compliance. *State v. Munoz*, No. 125,544, 2023 WL 6324275, at *8 (Kan. App. 2023) (unpublished opinion). We granted Munoz' petition for review. Because we agree with the Court of Appeals that Munoz did not substantially comply with the MDDA, we affirm. As such, we do not reach the other issues presented in this appeal.

The rights created by the MDDA are purely statutory and are conditioned by the terms of the statute itself. *State v. Griffin*, 312 Kan. 716, Syl. ¶ 1, 479 P.3d 937 (2021). For example, an inmate requesting final disposition must be in the custody of KDOC, and the inmate must deliver the request to the court, county attorney, and the Secretary of Corrections:

> "(a) Any inmate *in the custody of the secretary of corrections* may request final disposition of any untried indictment, information, motion to revoke probation or complaint pending against such person in this state. The request shall be in writing, addressed and *delivered to the court* in which the indictment, information, motion to revoke probation or complaint is pending, *to the county attorney* charged with the duty of prosecuting it *and to the secretary of corrections*. Such request shall set forth the place of imprisonment.

> "(b) *The secretary shall* promptly inform each inmate in writing of the source and nature of any untried indictment, information, motion to revoke probation or complaint against such inmate of which the secretary has knowledge or notice, and of such inmate's right to make a request for final disposition thereof.

3

"(c) Failure of the secretary to inform an inmate, as required by this section, within one year after a detainer has been filed at the institution shall entitle such inmate to a final dismissal of the indictment, information, motion to revoke probation or complaint with prejudice." (Emphases added.) K.S.A. 22-4301.

Next, K.S.A. 22-4302 explains that KDOC's duties to certify an inmate's request are only triggered after the Secretary received such a request.

"*Upon receipt of a request* made pursuant to K.S.A. 22-4301, and amendments thereto, *the secretary of corrections* shall promptly:

"(a) Certify the term of commitment under which the inmate is being held, the time already served on the sentence, the time remaining to be served, the good time earned, the time of parole eligibility of the inmate, and any decisions of the prisoner review board relating to the inmate;

"(b) for crimes committed on or after July 1, 1993, certify the length of time served on the prison portion of the sentence, any good time earned and the projected release date for the commencement of the postrelease supervision term; and

"(c) send by registered or certified mail, return receipt requested, one copy of the request and certificate to the court and one copy to the county attorney to whom it is addressed." (Emphases added.) K.S.A. 22-4302.

Lastly, K.S.A. 22-4303 explains that the 180-day clock begins to tick only after the district court and county attorney receive the certificate from the Secretary of Corrections. K.S.A. 22-4303 makes clear that the clock does not start merely because the inmate has mailed a writ to the district court.

"(b)(1) *Following the receipt of the certificate by the court and county attorney from the secretary of corrections*, the indictment, information or complaint shall be brought to trial, or the motion to revoke probation shall be brought for a hearing:

(A) If the inmate has one detainer, *within 180 days*;

(B) if the inmate has detainers from multiple jurisdictions, the first detainer shall be brought within 180 days and each subsequent detainer shall be brought within 180 days after return of the inmate to the secretary or transportation of the inmate to the jurisdiction following disposition of a previous detainer; or

(C) within such additional time as the court for good cause shown in open court may grant.

. . . .

"(4) If, after receipt of such certificate, the indictment, information or complaint is not brought to trial within the time period specified in this subsection, or the motion to revoke probation is not brought for a hearing within that period, *no court of this state shall any longer have jurisdiction thereof*, nor shall the untried indictment, information, motion to revoke probation or complaint be of any further force or effect, and *the court shall dismiss it with prejudice*." (Emphases added.) K.S.A. 22-4303.

Munoz argues that because the McPherson County Attorney had actual notice of Munoz' MDDA request, the statutory requirement that the Secretary of Corrections issue a certificate to the court and the county attorney is effectively rendered superfluous, as its purpose was achieved through different means. We note that at first blush, this argument appears seductive. It is not strictly accurate, however, because there is nothing in this record to indicate that the Secretary of Corrections ever had notice of Munoz' request. More importantly though, the argument is foreclosed by our recent decision in *Griffin*.

In *Griffin*, the defendant properly addressed his MDDA request to the district court, district attorney, and Secretary of Corrections; however, the document was only delivered to the district court and district attorney. The district attorney responded and told the defendant he needed to contact prison officials to request the proper documents be prepared and delivered. The mistake caused a two-week delay, but ultimately the Secretary of Corrections received the MDDA request and filed its required certificate. The defendant did not allege any wrongdoing by prison officials. 312 Kan. at 717-18, 724. We stated:

> "[T]o be complete, a UMDDA request requires contributions from both the inmate and corrections officials, so the caselaw applying the UMDDA examines both.

> "Any exception to statutory compliance requires a court to first decide whether the inmate followed the UMDDA's requirements. . . .

> . . . .

> ". . . [W]hen the inmate does what the UMDDA requires, statutory compliance may be excused when a defect arises because prison officials failed to do those things required of them. In those instances, the UMDDA's time limit may be triggered because it is a 'right to which [the inmate] "cannot be deprived by the laches of public officials."'

> . . .

> ". . . 'Accordingly, if there was a deficiency in the execution of those statutory responsibilities, that failure is not attributable to [the inmate], nor should it prejudice his ability to invoke the statute.'

> . . . .

"... [T]he UMDDA and its caselaw turn on both the inmate's actions and those of prison officials, and the statute controls absent some claim that prison officials thwarted the inmate's request by misfeasance or malfeasance. [Citations omitted.]" 312 Kan. at 722-24.

Munoz makes no claim that KDOC officials thwarted his request. It is undisputed in this case that they never received his request. *Griffin* allows for substantial compliance only "when the inmate does what the UMDDA requires" and yet "a defect arises because prison officials failed to do those things required of them." 312 Kan. at 723. In the absence of malfeasance, "[u]nder the statute's plain language, the 180-day clock does not begin to run until the 'receipt of the certificate by the court and county attorney from the secretary of corrections.'" 312 Kan. at 725. That did not happen in this case, so the MDDA clock never began to run. The case is remanded with directions to reinstate the theft charge.

Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed, and the case is remanded with directions.