NOT DESIGNATED FOR PUBLICATION

No. 129,036

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHANNON L. KIMBERLIN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER MAGANA, judge. Submitted without oral argument. Opinion filed June 5, 2026. Affirmed.

*Craig Shultz*, of Shultz Law Office, P.A., of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before COBLE, P.J., HURST, J., and PAULA HOFAKER, District Judge, assigned.

PER CURIAM: Shannon L. Kimberlin pled no contest to two counts of electronic solicitation. At sentencing, the district court orally pronounced a sentence of 147 months of imprisonment for each count, to be served consecutively, and granted Kimberlin's departure motion, placing him on probation. The sentencing journal entry later filed showed the sentences were to be served concurrently yet listed the total term of imprisonment as 294 months. At Kimberlin's first probation violation hearing, the district court modified the terms of his probation, ordered a quick-dip sanction, and reinstated probation. The journal entry of probation violation hearing again indicated the sentences

1

for the two counts were to be served concurrently and, this time, listed the total term of imprisonment as 147 months. At Kimberlin's second probation violation hearing, the district court revoked his probation and ordered him to serve his underlying sentence. The journal entry of probation revocation hearing indicated the sentences—294 months total—were to be served consecutively. Kimberlin appeals by challenging the consecutive imposition of the sentences, arguing that his sentence is either illegal or was improperly modified. We disagree and affirm the district court's decision to correctly reflect his sentences by nunc pro tunc order.

FACTUAL AND PROCEDURAL BACKGROUND

In 2014, Kimberlin pleaded no contest to two counts of electronic solicitation, each a severity level one person felony. The district court held a sentencing hearing and orally ordered him to serve 147 months in prison for each count, to be served consecutively, with 36 months of postrelease supervision. The court granted Kimberlin a downward dispositional departure to 60 months of probation.

The journal entry of sentencing, filed 8 days later, indicates the district court sentenced Kimberlin to 147 months of imprisonment on each count, which reflects the low range in the guidelines box. In the section of the journal entry of sentencing addressing count two, a box is checked that reads: "Concurrent to Count(s) 1." But in the recap section of the journal entry, it shows the total imposed sentence is 294 months.

In early 2015, Kimberlin's supervising officer alleged he violated the terms of his probation. At the probation violation hearing on March 10, 2015, the court found Kimberlin violated his probation and ordered new conditions of probation and a three-day quick-dip sanction. The journal entry of probation violation hearing reflects the same sentence as the original journal entry of sentencing, namely that the sentences were to be served concurrently, except that the total term of imprisonment says 147 months.

2

Later in 2015, Kimberlin's intensive supervising officer again alleged he committed probation violations. The court held a hearing over two days in March and April 2016. The journal entry of probation violation hearing shows that the court found Kimberlin violated his probation, revoked his probation, and ordered him to serve his original sentence. This revocation journal entry reflects the following sentence: 147 months of imprisonment on each count, with the counts to be served consecutively, and 36 months of postrelease supervision.

Roughly eight years later, Kimberlin, represented by counsel, filed a motion to correct the journal entry of judgment. His motion acknowledged that at the original sentencing hearing, the district court ordered the two counts to run consecutive, but he argued that the journal entry filed after the first probation violation hearing indicated that the court had modified the total sentence by running the two sentences for each count concurrent. Kimberlin also claimed that when the journal entry following the second and final probation violation hearing listed consecutive sentences, it represented an illegal sentence because the court had no authority to "increase" the underlying sentence.

The district court held a hearing on March 17, 2025, on Kimberlin's motion. After hearing arguments, the district judge denied Kimberlin's motion, explaining:

> "As noted, the first two, the journal entry of sentencing and journal entry of the first [probation violation] on March 10th, 2015, those did contain errors as to the concurrent versus consecutive aspect of the counts. And then I've also reviewed my Court's notes from all of the hearings to confirm what I had written down was in line with what the alternate sentence was going to be.
>   . . . .
> "The transcript or partial transcript [defense counsel] provided from that October 20th, 2014, sentencing does state the Court sentenced the defendant to consecutive counts, and then the total controlling sentence of those two counts was 294 months,

3

running consecutive to any other cases. That was 147 months on both Count 1 and 2, so running consecutive for 294.

"That was the legal and pronounced sentence on the record that day. That sentence was not imposed, the 294-month sentence, because Mr. Kimberlin was granted probation from the 294-month prison sentence.

. . . .

"[The journal entry] was then filed. Again, the error in that stated the counts were concurrent to each other. When the State approved that, they missed that error. When the Court signed the journal entry, it also missed that error into the counts. But again, the third page—actually, the fourth page of the journal entry under Recap of Sentence does state: Total underlying prison term, if there is probation, is 294 months. So that was correct. The page before listing the concurrent counts was incorrect.

"That journal entry remained on file until the [probation violation] occurred. In March of 2015, that sentence was still legally 294 months and was not changed by the erroneous Journal Entry of Judgment as to Count 2.

"The first [probation violation] hearing, then, on March 10th, 2015, the defendant was reinstated on that probation after admitting to violation of probation.

"The [probation violation] at the—both the hearing . . . and again, [defense counsel] has provided a partial transcript of some of that hearing, and he correctly argues that the transcript does—or was silent on any modification of the sentence, but that is because there was no modification of the sentence at that hearing. So it would stand to reason that there would be nothing in the transcript talking about a modification since the Court didn't order one, and there is nothing, in the Court's opinion, that touches upon any modification.

. . . .

"Nevertheless, the revocation didn't occur until the second [probation violation]. But again, my opinion, and I think the law as far as I'm aware of, would support that a district court judge is unable to modify a felony sentence without [probation] revocation. The statute section [defense counsel] read into the record refers to modifying one, and it refers to imposing sentence to incarceration. I agree that at the time of a [probation] revocation, clearly, a judge can modify felony sentences. Those are not—that's not in dispute.

"But I think that any judge who sought to or ordered that a felony sentence be modified at a [probation violation] hearing where the defendant was reinstated, meaning

4

a [probation violation] hearing where if the defendant was not revoked to serve his sentence, that any such order modifying the controlling sentence to some lesser sentence would be an illegal sentence. It would be an illegal modification. There is just no authority that allows a judge to—to modify a sentence at that time, in my opinion."

Following the hearing, the district court filed an order nunc pro tunc correcting the errors in the journal entries from sentencing and the first probation violation hearing.

Kimberlin timely appealed.

ANALYSIS

Kimberlin attempts to raise five distinct issues, but his stated concerns largely overlap. His appeal raises alternative issues, the first of which he frames as whether the law provides irrevocable power and certainty to an oral statement in isolation from the written journal entry specifically approved by the judge and the prosecutor. In the alternative, Kimberlin argues that the district court judge legally modified his sentence at the first probation violation hearing and illegally modified it at the second hearing.

Before analyzing the merits of Kimberlin's claims, we must address the State's position that Kimberlin's appeal fails because he did not include the requisite transcripts as part of the record on appeal. It is true that an appellant has the burden to ensure this court has an adequate record to address the merits of his appeal. See *State v. Blackmon*, 285 Kan. 719, 733, 176 P.3d 160 (2008).

The record contains a transcript from the preliminary hearing and a transcript from the hearing on the motion underlying this appeal. However, Kimberlin failed to include complete transcripts from the sentencing hearing or the two probation violation hearings, all of which are critical to his appeal. Instead, with his motion to correct the journal entry, he included one page from the sentencing hearing that contains the oral pronouncement

of sentence, and six pages from the first probation violation hearing that includes the district court's oral rulings. We do not know whether Kimberlin failed to produce the full transcripts for strategic reasons, cost or preparation, or otherwise. Even so, the parties do not validly dispute the relevant facts and there is sufficient evidence in the record to dispose of Kimberlin's appeal on its merits.

I.        *The oral pronouncement at sentencing controls.*

Kimberlin first asks us to ignore longstanding Kansas law by finding the journal entry of sentencing filed after the sentencing hearing controls Kimberlin's sentence, rather than the oral pronouncement of his sentence. This court exercises unlimited review of legal questions. *State v. Gonzalez*, 307 Kan. 575, 593, 412 P.3d 968 (2018). To the extent Kimberlin challenges the legality of his sentence, this court's review is also unlimited. See *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024).

Typically, once a district court imposes a presumptive sentence or a sentence resulting from a plea agreement, this court lacks jurisdiction to exercise review of an appeal of the sentence. See K.S.A. 21-6820(c); *State v. Johnson*, 317 Kan. 458, 466, 531 P.3d 1208 (2023); *State v. Albano*, 313 Kan. 638, 640, 487 P.3d 750 (2021). However, Kimberlin is not directly appealing his sentence; instead, he is challenging the legality or method used to sentence him, so the presumptive sentence preclusion does not apply. See, e.g., *Johnson*, 317 Kan. at 466 (recognizing appellate jurisdiction to correct an illegal sentence even if it were agreed to in plea and approved by the court on record). As a result, we may review his challenge.

Here, the district court orally pronounced Kimberlin's sentence at the original sentencing hearing, specifically ordering the sentences on the two counts—147 months for each—to be served consecutively. Despite implying otherwise in parts of his brief, Kimberlin concedes this is what occurred.

In Kansas, the sentence pronounced from the bench controls. *State v. Johnson*, 320 Kan. 246, 248, 564 P.3d 782 (2025). In *Abasolo v. State*, 284 Kan. 299, 304, 160 P.3d 471 (2007), the Kansas Supreme Court made clear that a sentence "does not derive its effectiveness from the journal entry." 284 Kan. at 304. The *Abasolo* court considered the legal implications of a situation when the oral pronouncement of a sentence differs from the journal entry of sentencing filed later—that is, "the orally pronounced sentence controls" and the journal entry "is erroneous." 284 Kan. at 304; see also *State v. Edwards*, 309 Kan. 830, 835-36, 440 P.3d 557 (2019) (a conflicting journal entry creates a clerical error that may be corrected at any time). Our Supreme Court has been consistent in its consideration of this issue. See, e.g., *State v. Moses*, 227 Kan. 400, 402, 607 P.2d 477 (1980) (also finding the orally pronounced sentence controls).

Kimberlin cites *Abasolo* in his brief and admits the orally pronounced sentence controls in Kansas, but he maintains this "particular application should not apply to this situation and it is certainly not clear that such an interpretation of inconsistencies is well-founded." Kimberlin seems to argue his situation requires a unique rule because the orally pronounced sentence was "much harsher" and because another incorrect journal entry followed the first probation violation hearing. He cites no authority to support his claim that his situation requires application of a special rule.

Kimberlin then questions the application of *Abasolo* to his case because, he argues, "there is a complete inconsistency between what was supposedly said at sentencing and what the judge signed and filed as the Journal Entry for the record." The situation of inconsistencies between the sentence given at the hearing and later in the journal entry is exactly what *Abasolo* clearly addresses—Kimberlin's situation is not unique or overly perplexing.

Kimberlin also cites the rule of lenity, in which a statute must be construed in a defendant's favor. See, e.g., *State v. Griffin*, 312 Kan. 716, 720, 479 P.3d 937 (2021).

7

However, this rule is subordinate to the rule that the interpretation of a statute must be reasonable and sensible to effect the legislative design and intent of the law. 312 Kan. at 720. Kimberlin argues that the "concept that a bench announcement takes precedence over the formal, signed Journal Entry of Judgment is not a true reflection of legislative intent." However, Kimberlin does not persuasively explain how the rule of lenity applies in analyzing his appeal, and he does not clearly elucidate what legislative intent is at issue. He cites K.S.A. 22-3426, which details how a sentencing journal entry is to be completed. It is unclear how this statute is relevant. The rule of which sentence controls—the orally pronounced sentence or the journal entry later filed—stems from caselaw, it is not based on a statute and requires no statutory interpretation or rule of lenity.

This court is duty bound to follow Kansas Supreme Court precedent unless there is some indication that the Supreme Court is departing from its previous position. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022). Kimberlin points to no indication that the Kansas Supreme Court is shifting its longstanding position on this issue.

Kimberlin also suggests that transcripts could be faulty, which would make it entirely unreasonable to rely on them to clarify what was said at sentencing. His arguments are specious at best, particularly because he never explicitly disputes that the district court orally pronounced the sentences to be served consecutively—so, to imply that the one-page transcript he provided is faulty is baseless. His argument also cuts against his primary point that a journal entry, which is subject to just as much human error as a transcript, is more reliable than a judge's oral statements at sentencing.

Kimberlin next maintains that the rule under *Abasolo* makes a journal entry meaningless and insignificant. He maintains the journal entry should carry more weight and be more carefully completed because it is otherwise unfair to defendants, who should be aware of their sentencing obligations. Ideally there would never be errors in the

8

judicial system, but that is a tall request for a human-run system. See *Nickelson v. Bd. of County Comm'rs of Lyon County*, 209 Kan. 53, 55, 495 P.2d 1015 (1972) (admitting the "possibility of human error being always present in the affairs of mankind"). Further, while Kimberlin places much emphasis on the import of the journal entry of sentencing, a defendant could likewise immediately become aware of his or her sentence simply by listening during the sentencing hearing and clarifying with the district court or counsel in real time should the defendant have any questions or confusion. Put simply, Kimberlin's arguments do not persuade us that his situation requires application of some special rule.

Next, Kimberlin tries again to distinguish his case by arguing there is a "distinction between the 'imposition' of the sentence and the 'effective' date of the sentence for other purposes," meaning the journal entry determines the sentence in some cases, like his, when there is a question of whether the sentences for multiple convictions are to be served concurrently or consecutively. He cites *Moses*, 227 Kan. at 402, where the Kansas Supreme Court said that a sentence is effective when pronounced from the bench. But Kimberlin's interpretation that *Moses* created some ambiguity about when a sentence is effective lacks merit because the *Moses* court was clear:

> "In *Parks v. Amrine*, 154 Kan. 168, 117 P.2d 586 (1941) we held that under the statutes then in force, the sentence 'was effective when rendered, even though the entry of it was not made on the journal until three days later.' 154 Kan. at 173, 117 P.2d at 590. The failure of the clerk to make the required entry did not impair the judgment's effectiveness. *Parks* was followed in *State v. Carte*, 157 Kan. 139, 138 P.2d 429 (1943) and *State v. Nichols*, 167 Kan. 565, 572, 207 P.2d 469 (1949). This has always been the rule in Kansas, and present statutes have not changed it. The journals and records are said to be merely formal evidence of the judgment and sentence; the sentence itself is that actually imposed by the judge. *Foster v. Zerbst*, 92 F.2d 950 (10th Cir. 1937). In *Walden v. Hudspeth*, 115 F.2d 558 (10th Cir. 1940) the late Judge Huxman explained judgments in criminal cases, saying:
>
> > "'Neither the commitment nor the clerk's entry of the judgment is the judgment. The judgment is the pronouncement by the court from the bench.'" 227 Kan. at 402.

9

Again, the law is clear that an orally pronounced sentence controls over a later journal entry. When a journal entry of sentencing does not reflect the orally pronounced sentence, the district court must correct the journal entry to reflect the imposed sentence. *Abasolo*, 284 Kan. at 304. Here, the district court properly entered a nunc pro tunc order to correct the journal entry of sentencing.

II.      *The district court did not modify Kimberlin's sentence.*

Kimberlin next argues the district court modified his sentence at the first probation violation hearing—changing the two sentences to be served concurrently rather than consecutively. He maintains the court then improperly modified his sentence at the second probation violation hearing, which is reflected in the journal entry memorializing the second probation violation hearing showing the two sentences to be served consecutively. So, we must first decide whether the district court modified Kimberlin's sentence, and, if it did, whether any modification was proper.

Questions of law, including statutory interpretation, are subject to unlimited review by this court. Further, to the extent Kimberlin challenges the legality of his sentence, this court's review is also unlimited. *Daniels*, 319 Kan. at 342.

We first acknowledge that before finding a revocable probation violation the district court had no authority to modify Kimberlin's sentence once it imposed the sentence. See *State v. Lamia-Beck*, 318 Kan. 884, 886, 549 P.3d 1103 (2024) ("Once a district court sentences a defendant, it loses jurisdiction to modify that sentence unless it is illegal or 'to correct arithmetic or clerical errors.'"). So, to modify Kimberlin's sentence, the court would have needed to find it was illegal or to invoke some other authority.

Kimberlin argues his sentence pronounced from the bench was illegal because it was ambiguous in connection with the later journal entry of sentencing. There is no legal

10

authority to support his claim that the discrepancy between an orally pronounced sentence and the sentence in a journal entry later filed results in an ambiguous sentence that is illegal. And, as already discussed, the oral pronouncement of his sentence controls.

What is more, there is no evidence of modification. The facts do not support his claim that the district court modified his sentence at the first probation violation hearing. First, under these facts, it is clear that the district court discussed modifying the terms of Kimberlin's *probation*—but there is nothing indicating it attempted to modify his *sentence*. See *State v. Jackson*, 66 Kan. App. 2d 84, 90-91, 577 P.3d 631 (2025) (distinguishing probation from a person's sentence and clarifying that "the extension of probation is not considered a modification of a sentence under Kansas law"). Second, the law in effect at the time did not authorize a court to modify a sentence at a probation violation hearing where the court elected to reinstate probation. See K.S.A. 2013 Supp. 22-3716(c)(1).

The district court's authority to impose sanctions during a person's term of probation is governed by K.S.A. 22-3716. "[T]he version of the statute in effect when [the offender] committed his crime, governs the procedure for revoking an offender's probation." *State v. Tafolla*, 315 Kan. 324, 328, 508 P.3d 351 (2022). The amended information indicates the crimes occurred on July 4 and 5, 2013, making the applicable statute K.S.A. 2013 Supp. 22-3716, which was effective on July 1, 2013.

This statute outlined the sanctions available to a district court when faced with an offender's probation violations. Those sanctions included such sanctions as continuation or modification of the conditions of probation, suspension of sentence or a nonprison sanction, two- or three-day intermediate jail sanctions, or longer jail sanctions if the offender had previously had intermediate sanctions imposed. K.S.A. 2013 Supp. 22-3716(c)(1)(A)-(D). This statute also permitted revocation "if the violator already had a sanction imposed pursuant to subsection (c)(1)(C) or (c)(1)(D)" or if "the offender

11

commits a new felony or misdemeanor or absconds from supervision," or if the court made specific public safety and personal welfare findings. K.S.A. 2013 Supp. 22-3716(c)(1)(E), (c)(8).

The graduated sanctions found between (c)(1)(A) and (c)(1)(E) were steps available to a district court, and of particular note is that subsections (c)(1)(D) and (c)(1)(E) are separated by the disjunctive "or." See *State v. Bee*, 288 Kan. 733, 741, 207 P.3d 244 (2009) (finding the word "or" is usually read as a disjunctive). The Kansas Supreme Court reviewed the intermediate sanction framework brought by the 2013 amendments to K.S.A. 22-3716 in *State v. Dooley*, identifying that a district court could "continue or modify the release conditions of the probation," order a sanction from the "graduated sanctions scheme," or "revoke the probation and require the violator to serve the original underlying sentence or any lesser sentence." 308 Kan. 641, 648-49, 423 P.3d 469 (2018).

The *Dooley* court clarified that the "final step" in the sanctions scheme is "to revoke the probation and require the violator to serve the original underlying sentence or any lesser sentence" under K.S.A. 2013 Supp. 22-3716(c)(1)(E). 308 Kan. at 649. Although the court in *Dooley* did not focus on this issue, we note there was authority to impose the original sentence or any lesser sentence only when revoking the offender's probation. K.S.A. 2013 Supp. 22-3716; see also K.S.A. 22-3608(a) ("The power to revoke or modify the conditions of probation or the conditions of assignment to a community correctional services program shall not be deemed power to modify the sentence.").

Leaning on this analysis, Kimberlin points us to the journal entry of probation violation hearing from the first probation violation hearing where it reads, "*Probation Revoked, Reinstated*, Violations Determined." (Emphasis added.) Because the court "revoked" his probation, Kimberlin contends, it had the authority to impose a lesser

12

sentence, which he claims it did as reflected by the journal entry. A review of the partial transcript of this hearing is not particularly helpful because it begins with the district judge stating, "I'm going to reinstate probation." Regardless of the language used, under K.S.A. 2013 Supp. 22-3716, the district court did not have the authority to revoke probation upon Kimberlin's first violation. While the journal entry language says the court revoked and then reinstated Kimberlin's probation, the effect of the district court's order was to modify and continue Kimberlin's probation. Additionally, there is nothing from the motion hearing transcript indicating the court believed it revoked Kimberlin's probation at the first hearing, and the partial transcript likewise fails to support Kimberlin's claim. Put simply, the district court had no authority to modify Kimberlin's sentence at the first probation violation hearing—and it did not. Nor did modification of Kimberlin's sentence occur at the second probation violation hearing because when the district court revoked Kimberlin's probation, it ordered him to serve his original sentence.

Not straying from his course, Kimberlin maintains the district court violated his constitutional rights by imposing a harsher sentence—by modifying his sentence—at the second probation violation hearing. Kimberlin's argument fails because there is no evidence showing the district court modified his sentence, as already discussed. Rather, the journal entry from the second probation violation hearing merely reflects Kimberlin's original sentence as pronounced at the sentencing hearing. There was no modification. Kimberlin again questions the reliability of transcripts but asks this court to read into the transcripts what is not there—some explicit ruling by the district court that it was modifying Kimberlin's sentence.

Finally, Kimberlin argues "fundamental fairness" entitles him to the "most favorable interpretation" of the proceedings. He cites no authority to support his contention that the concept of fundamental fairness applies in this context or that it would be appropriate under these circumstances, and as a result, the point is waived. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020).

13

Kimberlin's sentence was never illegal, or legally or illegally modified, and the district court properly corrected errors through the nunc pro tunc order.

Affirmed.